FRANCIS VOSE, Appellant, *v.* NATHANIEL A. COWDREY et al., Respondents.

Plaintiff's complaint alleged, in substance, that certain of the creditors of an insolvent railroad corporation, entered into an agreement to purchase its property upon a foreclosure sale, and to organize a new company for the purpose of operating the road, which agreement provided for the issuing of bonds and stock of the new company, and apportioning them among the holders of the mortgage bonds, actually issued, of the old company and among certain other specified classes of creditors ; that in pursuance of the agreement the property was purchased for less than the amount of mortgage bonds held by the parties to the agreement and was afterward transferred to the new company, its stock and bonds issued, and distributed as stipulated ; that the old company was indebted to plaintiff upon a contract for iron rails furnished to lay its tracks, and, under the contract of purchase, plaintiff was equitably entitled to its mortgage bonds for the balance claimed.    This claim was unprovided for in the creditors' agreement. Plaintiff was a party to that agreement, he holding a large amount of the mortgage bonds provided for therein, and he received their proportion of the bonds and stock of the new company.    Plaintiff claimed that the bonds to which he was equitably entitled should be considered as issued at the time of making the creditors' agreement, and that the property in the hands of the new company was subject to the trust of providing for them, as other mortgage bonds were provided for in that agreement.    There was no allegation of any fraud in the agreement, or that any of the stockholders of the old company derived any benefit thereunder, or that the foreclosure or sale were collusive.

On demurrer,—*Held*, that the creditors who entered into the agreement were *bona fide* purchasers, and took the property clear of any trusts in favor of other creditors ; that although as between the old company and its creditor equity would consider that done which ought to have been done, the rule did not affect the rights of third parties (as between each other) who had contracted in reference to what the company had

actually done, and especially where the one claiming the benefit of it was a party to that contract, assented to its terms and received its benefits; and that, therefore, the facts stated did not constitute a cause of action.

(Argued February 21, 1872; decided April 30, 1872.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, in favor of defendants, entered upon an order affirming an order of Special Term sustaining demurrers to plaintiff's complaint, and directing judgment for costs.

The complaint is very voluminous, but its main allegations are, in substance, that on the 3d of December, 1856, the firm of Vose, Livingston & Co, of which the plaintiff was a member, entered into a contract with the La Crosse and Milwaukie Railroad Company for the sale to it of 11,000 tons of railroad iron, to be paid for in first mortgage bonds at eighty cents on the dollar, which bonds were to be made and signed by the company. That it was well understood between the parties, that to enable Vose, Livingston & Co. to perform their contract, it would be necessary for them to dispose of the bonds as received, and that, to prevent loss to them by the depreciation of their market value, it was agreed that the issue of 1857 should not exceed $2,500,000; that if the company should sell any of such issue of $2,500,000 of such bonds to be made during the year 1857 at a less rate than eighty cents on the dollar, they should pay to the firm such an additional amount of bonds as should, at the lowest rate at which any of them should be sold, pay Vose, Livingston & Co. the contract price of the iron; that the bonds were issued, and, during the year 1857, over $700,000 of them were delivered to Vose, Livingston & Co., in payment for iron delivered by them under their contract, but that during the same year the company disposed of other portions of the issue of $2,500,000 to other parties at rates not exceeding forty cents on the dollar, without making any allowance to Vose, Livingston & Co., and also made further issues of bonds beyond the $2,500,000, and sold them at thirty cents on the dollar.

The losses thereby sustained by the firm, and the failure of the company to make satisfaction therefor, are fully set forth.

The bonds were secured by a mortgage of the road of the company to Greene C. Bronson, James T. Smith and Shepherd Knapp, as trustees, and provided for an issue of $10,000,000 of bonds. The total amount actually issued was $4,000,000.

The plaintiff claims that, by reason of the premises, his firm became entitled to an additional amount of bonds, and also to damages. It is further alleged that the iron sold by Vose, Livingston & Co. was used in the construction of the road of the company from Portage City to La Crosse; that the company became insolvent, and has ever since remained so, and failed to keep up its organization; that Bronson, Smith and Knapp, the trustees, foreclosed the mortgage in 1859, and a decree of sale was obtained in 1862, whereby it was adjudged that the bonds numbered from 1 to 1991, inclusive (embracing those which had been issued to Vose, Livingston & Co.), be paid in full, and that on the residue of the $4,000,000 there was then due only the sum of $803,600, making the total amount due on the mortgage $2,794.600.

The complaint then sets forth an agreement made in 1861, between the creditors, for reorganizing the company, by purchasing its property under the foreclosure then pending. The plaintiff was a party to this agreement, having previously purchased the interest of his copartners in the claim of his firm. This agreement provided for the purchase of the road by such creditors as should join in the agreement, and for the formation of a new company by the purchasers, and the issue of new bonds and stock, to replace the first mortgage bonds and other specified liabilities of the old company. Of the first mortgage bonds, only the $4,000,000 actually issued were provided for by this agreement. It made no provision for the floating or unliquidated debts of the company. The $4,000,000 of bonds provided for were specified by their numbers. Those from 1 to 1991 were to be replaced by first mortgage bonds of the new company at par; those of higher

numbers were provided for at reduced rates, in bonds and stock of the new company to be formed.

Trustees were appointed to purchase the road, at the fore-closure sale, for the benefit of the creditors who should unite in this agreement, to audit the claims of such creditors and issue certificates therefor; and, on surrender of such certifi-cates, to deliver to each holder his quota of the bonds or stock of the new company to which he should be entitled.

Bondholders of the La Crosse and Milwaukie Railroad Com-pany, to an amount exceeding $3,800,000, became parties to this agreement.

The road was sold under the foreclosure in 1863, and bought in on behalf of the trustees for these creditors, under the agreement, for $2,675,000.

This sale was confirmed by the Circuit Court of the United States for the district of Wisconsin; being the court by which the foreclosure and sale were decreed.

A new company was organized under the name of the Mil-waukie and St. Paul Railroad Company; and the purchasers at the foreclosure sale conveyed the road and its property to that company in pursuance of the agreement.

Various communications between the plaintiff and the trustees under the agreement, on the subject of the claim of the plaintiff (who represented Vose, Livingston & Co.) against the La Crosse and Milwaukie Railroad Company, are set forth in the complaint. But no liquidation or allowance of the claim was made by the trustees. The plaintiff claims that he is entitled, as a creditor of the old company, to follow its properties which have come to the hands of the Milwaukie and St. Paul Railroad Company; and also that, under the agreement of December 3, 1856, made between the old com-pany and Vose, Livingston & Co., they became entitled to an additional amount of first mortgage bonds; that such bonds ought to be issued to the plaintiff by the trustees under the first mortgage of the old company; and that such additional bonds, so to be delivered to them, should be redeemed in stock and bonds of the new company, pursuant to the agree-

ment of 1861, under which the Milwaukie and St. Paul Rail road Company was organized, and acquired the properties of the old company.

The trustees under the first mortgage of the La Crosse and Milwaukie Railroad Company, the trustees under the agreement of 1861 for reorganization, and the Milwaukie and St. Paul Railroad Company are made parties defendants.

All the rights of Vose, Livingston & Co. have become vested in the plaintiff by assignments from his copartners.

It does not appear that any of the stockholders of the La Crosse and Milwaukie Railroad Company united in the new organization, or received any of the property of the old company, or of the bonds or stock of the new company. Neither is any fraud or collusion in the foreclosure or purchase thereunder alleged.

Defendants demurred to the complaint, that it did not state facts sufficient to constitute a cause of action; also for misjoinder of parties and causes of action.

*Theron R. Strong* for the appellant. All the claims made against the defendants are connected with the trusts, and arise from it; and in such an action it is proper to unite everything connected with the trust. (*Bailey* v. *Inglee*, 2 Paige Chan. R., 278; Story's Eq. Pl., §§ 285, 185 *a*, 286, 286 *a*; *Bank of America* v. *Pollock*, 4th ed., V. Chan. R., 215; *Brinkerhoff* v. *Brown*, 6 Johns. Chan., 139; *Fellows* v. *Fellows*, 4 Cowen, 682; *Boyd* v. *Boyd*, 5 Paige, 65; *Blackett* v. *Laimbeer*, 1 Sandf. Chan., 366; *Lawrence* v. *Bank of the Republic*, 35 N. Y., 324; *Shields* v. *Thomas*, 18 How., 253; *Fitch* v. *Creighton*, 24 id., 159; Mitford's Pl., 181; *Gilchrist* v. *Stevenson*, 9 Barb., 9; Willard's Eq. Jur., §§ 471, 472; *Richtmeyer* v. *Richtmeyer*, 50 Barb., 35.) Different parties interested in an account, and persons having distinct interests in the same security, although not in the same right, are properly joined. (Barbour on Parties, 356, 461, and cases cited; *Richtmeyer* v. *Richtmeyer*, 50 Barb., 60, and cases cited; also cases above cited.) Equity regards the property

of a corporation to be held in trust for the payment of its debts, and creditors can pursue it, unless it has passed into the hands of a *bona fide* purchaser, and equity will charge a fund derived from a sale of its property with a trust in favor of creditors. (*R. R. Co.* v. *Howard,* 7 Wal., 392; Story's Eq. Jur., 9th ed., § 1252; *Mumma* v. *Potomac Co.,* 8 Pet., 286; *Wood* v. *Dummer,* 3 Mason, 308; *Vose* v. *Grant,* 15 Mass., 522; *Spear* v. *Grant,* 16 id., 14; *Curran* v. *Arkansas,* 15 How., 307.)

*Francis N. Bangs* for the respondents. Plaintiff is estopped by the decree in the foreclosure suit from claiming the security of the mortgage for his equitable claim. (*Bruen* v. *Hone,* 2 Barb., 592; *Harris* v. *Harris,* 36 id., 94; *Castle* v. *Noyes,* 14 N. Y., 329; *Dwight* v. *St. John,* 25 id., 203.) The Milwaukie and St. Paul Railroad Company is not chargeable with the obligations of its predecessor. (*Velas* v. *M. R. R. Co.,* 17 Wis., 497.) It is a *bona fide* purchaser. (*M. Co.* v. *St. P. Co.,* 6 Wal., 745.) Plaintiff cannot impeach the sale. (*Croushay* v. *Soutter,* 6 Wal., 640.)

RAPALLO, J. The plaintiff bases his claim to relief in this action upon two grounds: 1st. That, at the time of the purchase by the Milwaukie and St. Paul Railroad Company of the property of the La Crosse and Milwaukie Railroad Company, he was a creditor of the last named company; and, 2d. That, under the scheme and agreement of September 3 and October 3, 1861, he was entitled to have provision made for his demands out of the bonds or stock of the new company. His claim to relief as a creditor of the La Crosse and Milwaukie Railroad Company is made upon the theory that the property of that company was in equity a trust fund for the payment of its debts, and that having been transferred, in the manner described in the complaint, to the Milwaukie and St. Paul Railroad Company, it continued subject to that trust, and should be applied accordingly. The case of *Railroad Co.* v. *Howard* (7 Wallace, 392) is cited in support of this pro-

position. That case recognizes the doctrine that equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and that it may be pursued by the creditors into whosesoever possession it may be transferred unless it has passed into the hands of a *bona fide* purchaser, and that stockholders cannot appropriate any part of it until the debts of the corporation are paid. (Story's Eq., § 1252.) In accordance with that doctrine, it was held, in the case cited, that where the stockholders of an insolvent corporation contracted to sell all its property to another corporation, under an arrangement with the mortgagees of the insolvent corporation, whereby such mortgagees consented to receive eighty-four per cent of the purchase-money in satisfaction of their claims to a much larger amount, and the residue (sixteen per cent) was to be paid to the stockholders, leaving judgment creditors unpaid, this residue of sixteen per cent represented the equity of redemption in the mortgaged property, and belonged to the insolvent corporation, which was entitled as trustee for the creditors to the benefit of the rebate made by the mortgagees, and that the judgment creditors were entitled to have it applied to their demands in preference to the stockholders to whom, by the terms of the contract, it was payable; and that it made no difference that the title to the property was transferred to the purchaser by means of a foreclosure of the mortgages thereon, such foreclosure having been made in pursuance of the arrangement, and merely as a means of consummating the contract of sale and transferring a clear title.

But the facts set forth in the complaint in this action do not make out a case for the application of that doctrine. The parties who combined under the scheme and agreement of 1861 to purchase the property of the La Crosse & Milwaukie Railroad Company were not the stockholders of that company, but certain classes of its creditors. No contract for the sale of the road was made by the insolvent corporation or its stockholders, and it does not appear that any of the stockholders were parties to the agreement.

There is no allegation in the complaint that the foreclo-

sure was collusive or the sale unfairly conducted. The property brought at the sale only $2,675,000, and the complaint shows that the parties who united in the agreement for purchase were holders of bonds to the amount of over $3,800,000, secured by the mortgage under which the sale was made. It is not shown that those who united in the agreement for purchase occupied any relation of trust toward the corporation or its other creditors, or were in any respect incompetent to purchase and hold the property in their own right and to agree among themselves as to the disposition to be made of it. Consequently they appear to have been *bona fide* purchasers, and to have acquired the property unincumbered by any trust except such as they themselves created by their agreement of October 3, 1861. They having organized as a corporation under the name of the Milwaukie & St. Paul Railroad Company, and transferred the property to that corporation in pursuance of the agreement, that company took it subject to the obligations created by the agreement of 1861, but no others.

The agreement of 1861 contains some provisions for issuing common stock of the Milwaukie & St. Paul Railroad Company to the holders of farm mortgage stock of the La Crosse & Milwaukie Railroad Company. What the nature of that stock was, does not appear in the complaint; neither does it appear that any of the holders thereof received the benefit of the agreement. It may be that judgment creditors of the La Crosse & Milwaukie Railroad Company might, under the principles enunciated in the case of *Rail Road Co.* v. *Howard* (7 Wall, 392), have been entitled in equity to compel the application to their demands, of the new stock thus secured to old stockholders of the insolvent company. But the complaint does not show the plaintiff to be entitled to relief against the defendants in this action, in respect of that stock. He cannot be permitted to assert that the agreement of October 3, 1861, was fraudulent as to creditors and that he is entitled to pursue the property on that ground, for he admits in his complaint that he was a party to and one of the trustees

under that agreement, and that in pursuance of it he surrendered a large amount of bonds of the La Crosse & Milwaukie Railroad Company, thus entitling himself to the benefits of the agreement. Being such party, he also necessarily assented to the issue of the new stock to the old stockholders. Although this might not prevent his asserting any equitable rights which he might have as a creditor, to the application of the new stock to the payment of his claims, yet it would preclude him from claiming as against the new company after they had distributed the new stock in pursuance of the agreement, and he would be obliged to follow it in the hands of the old stockholders who might have received it. There is no allegation in the complaint that any of the defendants have in their hands any of the stock thus appropriated to the old stockholders of the La Crosse & Milwaukie Railroad Company.

Even if it be assumed, therefore, that the plaintiff was a creditor of the La Crosse and Milwaukie Railroad Company, as claimed, and that he could pursue his remedies in equity without having exhausted his legal remedies or established his status as a creditor by the recovery of a judgment, and that his right would not be barred by delay, the facts alleged in the complaint do not show that any of the defendants have in their hands any property applicable to the payment of his demand, or that he has any cause of action against them, unless by virtue of some right conferred upon him by the agreement of October 3, 1861. Under that agreement he clearly cannot claim to have provision made for any unsecured and unliquidated demand for damages, or otherwise, arising under his contract of December 3, 1856. The agreement of October 3, 1861, provides only for the redemption of different classes of bonds therein specified, held by the parties to the agreement, and which they should surrender to the trustees. It makes no provision for general unsecured creditors.

To meet this difficulty, the plaintiff claims that, inasmuch as according to his construction of the agreement of December, 1856 (the correctness of which construction it is not necessary to question), the La Crosse and Milwaukie Railroad Company

ought to have issued to him a sufficient additional amount of bonds to make up the amount of the purchase-money of the iron at the reduced price of the bonds, he is now entitled to be treated precisely as if the additional bonds had been actually issued to and held by him at the time of the agreement of October 3, 1861, or of the distribution of the bonds and stock of the Milwaukie and St. Paul Railroad Company, under that agreement, and that the defendants, or some of them, hold the property formerly of the La Crosse and Milwaukie Railroad Company subject to the trust of making provision according to that agreement for the additional bonds which the plaintiff should in equity be thus supposed to hold.

The insuperable difficulty in the way of granting relief on this theory is that the agreement of October 3, 1861, provides only for bonds actually issued and outstanding. In the scheme which was the basis of the agreement, the numbers and amount of these bonds are specifically stated, and specific amounts of new bonds and preferred stock are appropriated to the redemption of such bonds, and the rates at which different classes of them are to be redeemed are specified. And the agreement provides only for the redemption of the specific bonds described in the scheme, viz.: First issue land grants numbered 1 to 1,991, medium issue land grants 1,992 to 2,500, second issue land grants 2,501 to 3,950, and $500 bonds numbered 1 to 100, making in all $4,000,000 of land grant bonds. This was the class of bonds the plaintiff's firm was to have received in payment for iron under the agreement of 1856, and if he had received the additional bonds claimed it is clear that they were not provided for by this agreement. He was a party to the agreement, and necessarily assented to the limitation of the amount of land grant bonds to be redeemed to $4,000,000. The parties to the agreement of October 3, 1861, entered into it with reference to the known existing obligations of the company, and arranged their scheme accordingly. However equitable it might have been in a controversy between the plaintiff and the La Crosse and Milwaukie Railroad Company to have treated as done that which they ought to have done, it

certainly would not be equitable as to third parties, who made their arrangements, predicated upon what the company had actually done, to extend this fiction to them, so as to affect their rights as between each other.

I am unable, after a careful examination of the complaint, to discover any theory upon which the plaintiff is entitled to relief in this action upon the facts alleged. It is, therefore, unnecessary to consider the minor objections to the joinder of parties, etc., set forth in the demurrers.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.