**AKRON COAL CO v FULTON et**
**GEORGE v FULTON et**
**LAUB v FULTON et (2 cases)**
**MULCAHY v FULTON et**
**SECURITY SAVINGS & LOAN CO v FULTON et**
**LOFTUS v FIRST-CENTRAL TRUST CO et**

Ohio Appeals, 9th Dist, Summit Co

Nos 2534, 2544, 2545, 2546, 2516, 2549 & 2553.

Decided Nov 25, 1935

Brouse, Englebeck, McDowell, May & Bierce, Akron, for plaintiffs in error in cases Nos. 2534 and 2516; W. J. Laub, Akron, for plaintiffs in error in cases Nos. 2544, 2545 and 2546; Colton & Wendt, Akron, for plaintiff in case No. 2549; Schwab & Peters, Akron, for plaintiff in case No. 2553.

John W. Bricker, Attorney General, Columbus, and Rice A. Hirshey, Asst. Attorney General, Akron, for defendants in error and defendants in all of the cases.

## OPINION

By WASHBURN, J.

There is a principle of law that is decisive of all of these cases, and that principle is the application of the answer to the following question:

Where the relation between a bank and its depositor is one of debtor and creditor, and the bank, although specifically required by statute to do so, refuses to pay the depositor on demand, and thereafter the bank is taken over for liquidation by the superintendent of banks, will a court of equity, by applying the principle of regarding that as done which should have been done, decide that the wrongful refusal of the bank to pay on demand changed the relation of the parties from that of debtor and creditor to that of trustee and cestui que trust, where to so decide will not affect the wrongdoer but will deny to other creditors equality of payment from the assets of the bank?

On this question the authorities are divided, some few holding that, upon the wrongful refusal of the bank to pay, a trust arises in favor of the depositor, and that the bank thereafter holds in trust for such depositor, property equal in value to the amount which it wrongfully refused to pay on demand; but the greater weight of authority, and we think the better reasoning, is that, under the circumstances indicated, equity will not imply such trust and thus create a preference in favor of such depositor as against other general creditors of the bank.

As stated, the question does not involve merely the rights of the wrongdoer and the party wronged, nor cases where the wrongdoer by his wrong **acquires** title to specific property, and still has such property or its identifiable equivalent.

What we have involved in the question is a situation where the title to the deposit passed to the bank and the depositor became a mere general creditor, without any interest in any specific property of the bank; his only right being to have his debt paid on demand. After the refusal of the bank to pay on demand, such depositor, as a creditor, had, in addition to any action which he might have for damages for breach of contract, the same right as before: to-wit, upon liquidation. to share ratably with other general creditors in the distribution of the property of the bank.

The bank did not **acquire** any specific property by its refusal to pay its debt, and it had no identifiable property of the depositor, either before or after such refusal, which could be impressed with the trust. The demand and refusal to pay did not change or in any way augment the assets of the bank, nor convert the bank's debt into specific identifiable property.

Under the maxim that equity will treat that as done which should have been done, equity should not supply the specific prop-

erty which is necessary as a basis for a trust, by treating the refusal to pay on demand as a delivery to the depositor of a specific part of the bank's property, which specific property the bank thereafter acquired from the depositor in the form of a special deposit and held in trust for him. (Shippee v Pallotti, Andretta & Co., 168 Atl. 880). To do so might be equitable as between such depositor and the bank, but it would be decidedly inequitable as between such depositor-creditor and the other general creditors of the bank; and the controversy is not between such depositor-creditor and the bank, but between him and the liquidator, who represents all of the general creditors of the bank (**Fulton, Supt. v Gardiner, 127 Oh St 77**).

A court of equity will not apply a maxim of equity to a controversy between a party wronged and innocent third parties who will suffer thereby, although the maxim would be appropriate to apply in an action between the wrongdoer and the person wronged.

"Wherever between two parties, A and B, an 'equity' exists with respect to a subject-matter held by one of them, B, in favor of the other, A, then **as between these two** a court of equity regards and treats the subject-matter and the real beneficial rights and interests of A as though the 'equity' had actually been worked out, and as impressed with the character and having the nature which they then would have borne."

1 Pomeroy's Equity Jurisprudence, (4th ed.), §365, pp. 679-681.

"Equity does not regard and treat as done what **might** be done, or what **could** be done, but only what **ought** to be done. Nor does the principle operate in favor of every person, no matter what may be his situation and relations, but only in favor of him who holds the equitable right to have the act performed, as against the one upon whom the duty of such performance has devolved."

Ibid., p. 679.

In substantiation of the foregoing statement, the author quotes, as an admirable statement of the true principle, from Sir Thomas Clarke, M.R., in Burgess v Wheate, 1 Blackstone W. 123, at p. 129.

"5. Equity will not regard a thing as done which is not done, when it would injure third parties who have sustained detriment and acquired rights by the things that have been done."

Casey v Cavaroc, 24 L. Ed. 779.

See also—

Vose v Cowdrey et, 49 N. Y. 336.

Eastland County v Chapman, 276 SW 654.

Venner v Cox, 35 SW 769.

Barnsdall State Bank v Dykes, 26 Fed. (2d) 696.

The same consideration should apply where the bank persuades a general depositor, or the holder of a certificate of deposit, not to insist on payment, by promising to convert his general deposit into a special deposit and hold same in trust for him, and wrongfully failing to do so; where the bank promises to invest a general deposit in bonds and falsely reports to the depositor that it has done so; where the depositor sends his check to his creditor and the check in the due course of business is presented for payment by another bank, and the bank on which the check is drawn wrongfully refuses payment; where the deposit is in a savings account and proper demand of payment is made and wrongfully refused; or where the bank receives the check of the depositor and promises to wire the amount thereof to another bank and wrongfully fails to do so.

There are many cases in which the transactions were in many respects similar to the transactions involved in the instant case, and in which courts of equity were requested to treat as done that which ought to have been done and imply trust relationships and thereby secure to the plaintiffs preferences in the distribution of liquidation assets, and in which the courts have refused such requests; not on the specific ground hereinbefore mentioned, that said maxim of equity would not be applied to such transactions, but on the ground that there were no specific res upon which trusts could be impressed, or on the ground that there was no actual augmentation of the liquidation funds by such transactions.

Blakey v Brinson, 76 L. Ed. 1089.

Jacobson v Slaughter, 175 Atl. 278.

City Council of Charleston v Elliott, 73 Fed. (2d) 920.

Howland v The People et, 229 Ill. App. 23.

First Natl. Bank v Williams, 15 Fed. (2d) 585.

Hecker, etc., M. Co. v Cosmopolitan T. Co., 242 Mass. 181.

Wenzel v People's State Bank, 259 NW 120.

Miller v Viola State Bank, 121 Kans. 193.

The People v Merchants & M. Bank, 78 N. Y. 269.

Beard v Independent Dist., etc., 88 Fed. 375.

See also—

Bayor v American T. & S. Bank, 41 NE 622.

The two groups of cases mentioned in which preferences have been denied, establish the rule which is supported by the great weight of authority, and which we think should be followed in disposing of the instant cases. We find nothing in the pronouncements of our Supreme Court which supports the opposite view, adopted in several states and illustrated in the following cases:

Johnson v Farmers Bank, 11 SW (2d) 1090.

Hiatt v Miller Bank, 34 SW (2d) 532.

Mallett v Tunnicliffe, 136 So. 346.

In some of the instant cases other incidental questions are presented, and as to them we agree with the conclusions of the trial court.

The trial court followed the proper rule in disposing of the instant cases, and therefore the judgments in the five error cases will be affirmed, and in the two appeal cases the demurrers will be sustained, as they were in the trial court; and the plaintiffs in said appeal cases not desiring to plead further, the petitions will be dismissed, at their costs.

FUNK, PJ, and STEVENS, J, concur in judgment.