**In re DESERT VILLAGE LIMITED PARTNERSHIP, Debtor.**

No. 03–33228.

United States Bankruptcy Court, N.D. Ohio.

July 19, 2005.

John J. Hunter, Jr., Toledo, OH, for debtor.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause is before the Court after a Hearing on the Motion for Adjustment of Contract filed by Dunkirk Realty, LLC and Brint Park Holdings, LLC; and the Debtor's objection thereto. Each of the Parties submitted briefs in support of their respective positions. The Court has now had the opportunity to review the arguments raised both at the Hearing and in these Briefs, together with the applicable law, and based upon that review, the Court, for the reasons now explained, finds that the Motion of Dunkirk Realty, LLC and Brint Park Holdings, LLC should be GRANTED.

### FACTS

On April 28, 2003, Desert Village Limited Partnership ("Desert Village") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code. Pursuant to 11 U.S.C. § 363, Desert Village subsequently filed Notice of Intent to Sell Real Property Free and Clear of Liens; this Court entered an order approving the sale on June 6, 2003. Desert Village and Dunkirk Realty, LLC ("Dunkirk") then effectuated the sale of the property according to the terms of their Real Estate Purchase Agreement ("the Agreement").

At the time the Agreement was made, the property at issue was undeveloped agricultural land, and part of the Current Agricultural Use Valuation ("CAUV") program, which provides a lower tax rate to owners of land reserved for agricultural use. O.R.C. § 5713.34(A)(1). Central to

this controversy is paragraph nine of the Agreement, which states that "agricultural tax recoupment, if any, shall be paid by Seller." (Doc. No. 204, Ex. A). As used here, recoupment is realized when CAUV property formerly used for agricultural purposes is converted to residential use. O.R.C. § 5713.34(A)(2). Although applicable, no agricultural tax recoupment was assessed at the closing, apparently because the parcel was not listed on the county auditor's tax screen as CAUV property. But had the agricultural recoupment tax been assessed at closing on the property in question, it is agreed that Dunkirk would have received a credit of $41,946.36.

Desert Village's sale of the property was finalized on June 17, 2003. The same day, Dunkirk made an assignment to Brint Park Holdings, LLC (Brint Park) and to The Olander Park System.[1] As part of this transaction Brint Park, as Dunkirk's assignee, consented to pay Desert Village a fee if Brint Park obtained satisfactory zoning and site plan approval for the property. Under this fee arrangement, Brint Park owes Desert Village $300,000 to be paid in six annual installments of $50,000 commencing June 17, 2005. Now, by way of their motion for adjustment of contract, Dunkirk and Brint Park ask that this obligation be reduced by the amount of the $41,946.36 credit Dunkirk would have received if tax recoupment had been realized at the time of the closing.

### DISCUSSION

■ The motion before the Court for the adjustment of a contract is a matter directly concerning the administration of the estate, and thus is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A). This Court, therefore, has the jurisdictional authority to enter a final order in this matter.

By way of their Motion, Dunkirk and Brint Park request that the agricultural tax recoupment that was not credited to them at the time of the closing be granted to them now in accordance with the terms of their Agreement. Desert Village objects, raising three points: (1) lack of standing; (2) misinterpretation of contractual terms; and (3) what the Court views as an equitable argument. The Court will now address each of these points in order.

■ Generally, standing exists when a party has alleged "such a personal stake in the outcome of the controversy, as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution." *Dallman, quoting Sierra Club v. Morton,* 405 U.S. 727, 731–32, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972), *citing Flast v. Cohen,* 392 U.S. 83, 101, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968) (internal citation and quotations omitted). Here, Desert Village argues this requirement is lacking because Dunkirk gave an unqualified assignment, and not merely a right to purchase, to Brint Park.

■ On this point, "[a]n unqualified assignment transfers to the assignee all the interest of the assignor in and to the thing assigned." *Leber v. Buckeye Union Ins. Co.,* 125 Ohio App.3d 321, 332, 708 N.E.2d 726, 733 (1997), *citing Pancoast v. Ruffin,* 1 Ohio 381 (1824). Thus, as argued by Desert Village, an unqualified assignment given to Brint Park would more than likely divest Dunkirk of a sufficient stake in this controversy, as its rights regarding the property would now belong to Brint Park. However, this position has both legal and factual weaknesses. Factually, the Court does not have enough information before it to judge the nature of the

1. The Olander Park System is not a party to this controversy.

assignment. Legally, Brint Park, a co-movant, clearly has a sufficient stake in the outcome of the proceeding to satisfy the requirements of standing. Hence, given both of these points, the substantive merits of this matter—the proper application of the Parties' Agreement—still need to be addressed. Accordingly, the Court turns its attention there at this time.

■ The second point raised by Desert Village concerns the contractual right of the Movants to assert their right of recoupment. From the arguments presented by the Parties, the primary point of focus here centers on the interpretation of the phrase "if any" in paragraph nine of the Agreement. This sentence states that "Agricultural tax recoupment, *if any,* shall be paid by Seller." (emphasis added) (Doc. No. 204, Ex. A). In its arguments, Desert Village asks the Court to interpret the term "if any" to mean that it must pay the actual "agricultural tax recoupment, not potential agricultural tax recoupment avoided." (Doc. No. 204, at pg. 8). That is, since recoupment was never estimated for the parcel in question, Desert Village argues that it should owe nothing.

Dunkirk and Brint Park, however, maintain that Desert Village's interpretation of "if any" ignores the plain meaning of the contract. In this way, Dunkirk and Brint Park put forth this reading: "if any" means that since the agricultural tax recoupment was applicable to the parcel at the time of the transaction, then it is to be paid by the seller (Desert Village) and credited to the buyer (Dunkirk), regardless that it was not, as a result of a mistake made by the county, not known at the time of the closing. (Doc. No. 207, at pg. 3). The points made by the Parties thus differ in this fundamental respect: Dun-

kirk and Brint Park assert that the Agreement's plain meaning looks to the conditions at the time of the transaction; in contrast, Desert Village's interpretation seeks to take into consideration events which took place subsequent to when the Agreement was consummated.

■ "In construing the terms of any contract, the principal objective is to determine the intention of the parties." *Hamilton Ins. Services, Inc. et al v. Nationwide Ins. Companies,* 86 Ohio St.3d 270, 273, 714 N.E.2d 898, 900 (1999), *citing Aultman Hosp. Assn. v. Community Mut. Ins. Co.,* 46 Ohio St.3d 51, 53, 544 N.E.2d 920, 923 (1989). "When the terms included in an existing contract are clear and unambiguous, [the court] cannot create a new contract by finding an intent not expressed in the clear and unambiguous language of the written contract." *Id.,* at 273, 714 N.E.2d 898, 901, *citing Alexander v. Buckeye Pipe Line Co.,* 53 Ohio St.2d 241, 246, 374 N.E.2d 146, 150 (1978). Furthermore, "[a] contract 'does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto.'" *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Auth.,* 78 Ohio St.3d 353, 362, 678 N.E.2d 519, 526–27 (1997), *citing Ohio Crane Co. v. Hicks,* 110 Ohio St. 168, 172, 143 N.E. 388, 389 (1924).

■ Using these principles as a foundation, the Court first observes that the Parties utilized a standard real estate contract. In its use, the Parties made no significant deviations. While not dispositive, the utilization of such a standard contract is indicative of an intent to abide by those practices and customs normally associated with real property transactions.[2]

---

**2.** Paragraph nine of the Agreement is taken "verbatim from paragraph 13 in the standard Real Estate Purchase Agreement form approved and adopted by the Toledo Board of Realtors and the Toledo Bar Association." (Doc. No. 207 at pgs. 2–3, and Ex. 1).

With regards thereto, it is an underlying principle that in real estate closings, contractual terms are to be gauged with respect to the time at which the transaction—i.e., the transfer of the property—is performed. *See generally Bowdoin Square v. Winn–Dixie Montgomery,* 873 So.2d 1091 (2003) and *Village of Grandview v. City of Springfield,* 122 Ill.App.3d 794, 78 Ill.Dec. 197, 461 N.E.2d 1031 (1984). This principle is illustrated in *Yoder v. Paradigm Acquisitions,* No. 4–03–01, 2003 WL 21142956, 2003 Ohio App. LEXIS 2329 (3rd Dist. May 19, 2003).

In *Yoder,* the parties entered into a real estate contract "that provided for the payment of prorated property taxes on the date of closing." *Yoder,* at *1, 2003 Ohio App. LEXIS 2329 at *1. Yoder calculated the taxes in accordance with the method set out in the contract and paid Paradigm Acquisitions. *Id.* Subsequently, the tax bill was levied with an amount less than what Yoder paid, and Yoder asked that "the parties refigure the tax proration based upon [the] reduced taxes." *Id.,* at *1, 2003 Ohio App. LEXIS 2329 at *2–3. Paradigm refused to renegotiate and Yoder filed suit. *Yoder,* at *1, 2003 Ohio App. LEXIS 2329 at *3.

■ On appeal, the Third District Court of Appeals upheld the Defiance Municipal Court's award of summary judgment to Paradigm, stating that "[p]roration is . . . necessarily based upon speculation and [Yoder] does not contend that the taxes were prorated in a manner different from what the contract provided." *Id.,* at *1, 2003 Ohio App. LEXIS 2329 at *1. As a result, Yoder was not entitled to rescission of the contract due to what turned out to be an overpayment of taxes. *Id.,* at *1, 2003 Ohio App. LEXIS 2329 at *1–2. This Court can see no reason why an agricultural recoupment assessment under the CAUV should be

treated any differently. Thus, while *Yoder* does not actually involve an agricultural recoupment, its principle still applies: the meaning of contractual terms are, in the absence of a specific term to the contrary, to be determined at the time of the transaction, regardless of any hardship that may subsequently befall one of the parties.

In this case, therefore, since the Parties utilized a standard real-estate contract, and set forth therein no explicit provisions to the contrary, it seems reasonable to conclude that the intent of the Parties was to afford the Buyer (Dunkirk, Brint Park) the benefit of *any* agricultural recoupment that would have been owed at the time of the transaction, regardless if it was not actually assessed at the time of the closing. Further supporting this view is the structure of the Parties' Agreement.

■ When ascertaining the parties' contractual intent, agreements are to be construed as a whole, and "[it] must be assumed that each provision of a contract is inserted for a purpose." *Ohio Historical Soc. v. General Maintenance & Engineering Co.,* 65 Ohio App.3d 139, 144, 583 N.E.2d 340, 343 (10th Dist.1989), *citing Skivolocki v. East Ohio Gas Co.,* 38 Ohio St.2d 244, 313 N.E.2d 374 (1974). In this matter, paragraph nine sets forth the Parties' respective rights and liabilities regarding taxes and assessments, including the CAUV. The paragraph begins:

> Seller shall pay all improvement assessments and taxes and assessments *due and payable* as of the date of closing. Current taxes and assessments shall be pro rated as of the date of closing . . . in accordance with the custom in Lucas County, Ohio.

(Doc. No. 204, Ex. A) (emphasis added).

The provision at issue, however, is different from this general provision, stating

"[a]gricultural tax recoupment if any, shall be paid by Seller." *Id.* Noticeably lacking from this provision is the limiting language found in the general provision specifying that only those taxes "due and payable" as of the date of closing are to be paid by Desert Village. This creates a problem from Desert Village's viewpoint.

The "due and payable" language can easily be taken to mean that a tax must actually be levied before any legal liability would arise; exactly the interpretation Desert Village seeks to apply to the agricultural recoupment. But wherever possible, every word of a contract is to be accorded meaning. And here, since the Parties decided to handle the agricultural recoupment separately, and since the Parties excluded the "due and payable" language from this provision, a better reading of this contractual provision is that any possible recoupment should be paid by Desert Village, regardless of if and when it is assessed. (recoupment actually levied the day of closing). *Helberg v. Nat'l Union Fire Ins. Co.,* 102 Ohio App.3d 679, 683, 657 N.E.2d 832, 835 (6th Dist.1995). To find otherwise, would not give proper effect to this differentiation, as it would simply be repeating the preceding sentence obligating the seller to pay all taxes and assessments due. At its core, this is simply an application of the interpretation maxim of *expressio unis est exclusivo alterius:* the inclusion of specific things implies the exclusion of those not mentioned.

In summary, principles of contractual interpretation support the position that the term "if any," as set forth in the Parties' Agreement, is unambiguous and means precisely what the Movants argue: regardless of whether it was actually assessed or known, the obligation of Desert Village to pay the agricultural recoupment under the CAUV program must be gauged from the time the Parties consummated their transaction.

The final objection raised by Desert Village is an equitable argument and is based upon these two facts: the county has yet to issue a bill for the conversion of the property from agricultural to residential use; and additionally, since all of the land was not converted, recoupment should only be due for that portion that was converted. These arguments, however, fail because, as previously discussed, the contractual language at issue here is unambiguous. Therefore, it is neither "the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result." *Foster Wheeler Enviresponse, Inc.,* 78 Ohio St.3d at 362, 678 N.E.2d 519, 526 (1997). Furthermore, ·the evidence demonstrates that it was within Desert Village's power to know of the mistake giving rise to this controversy and to have fixed that mistake at the closing. And, per the maxim, "equity will treat as done that which should have been done," recovery cannot be allowed when Desert Village had the means necessary to avoid the mistake altogether. *Akron Coal Co. v. Fulton,* 52 Ohio App. 257, 259, 3 N.E.2d 653, 654 (9th Dist.1935).

In reaching the conclusion found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Motion of Dunkirk and Brint Park for Adjustment of Contract be, and is hereby, GRANTED.