DENNIS A. CRANE, Plaintiff-Appellant, *v.* C. E. MULLIKEN, Defendant-Appellee.

Fourth District   No. 15687

Opinion filed August 6, 1980.—Rehearing denied September 2, 1980.

Paul C. Hendren, of Williamson, Miller & Hendren, of Champaign, for appellant.

Birch E. Morgan, of Phillips, Phebus, Tummelson & Bryan, of Urbana, for appellee.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Plaintiff appeals from the order of the trial court which dismissed with prejudice his amended complaint for specific performance and entered judgment for defendant.

On April 1, 1978, plaintiff, Crane, as buyer, and defendant, Mulliken, as seller, executed a printed form of contract relating to the sale of 18.5 acres described as the Modern Mart Plaza for a stated consideration of $1,168,500. It recited the deposit of $50,000 into the "Crane Real Estate Trust Account" which apparently was controlled by buyer. The form included 10 numbered paragraphs denominated "Conditions of Offer." Four paragraphs were completed with typed information or provisions, including the provision that possession was to be delivered on or before July 1, 1978; payment was to be cash at closing "Subject to purchaser obtaining financing. Purchaser has 90 days to obtain financing." One paragraph provided "all real and personal property included."

The complaint alleges that the contract related to:

"[T]he real estate, improvements, inventory and fixtures of the Modern Mart Plaza, a shopping center in Rantoul, Illinois, that included an IGA grocery store which Defendant had leased to a Third Party on a long-term lease, a Ben Franklin Variety Store, a ladies' dress shop, an Econ-O-Mart discount store, and numerous other commercial stores, some of which Defendant himself operated, and some of which were leased to others; that Plaintiff is not certain which stores Defendant leases and which he operates."

It is further alleged that buyer sought financing at one lending institution but was advised:

"[T]hat records and documentation of existing leases, and income and expense records of the shopping center complex and its stores would have to be examined by the prospective lender before a decision would be made regarding financing Plaintiff's purchase of the shopping center."

It is further alleged that it was and is the ordinary, customary practice of commercial lending institutions in the area to require financial records as described for purposes of evaluating applications for financing, and upon such allegation the buyer alleged:

"That an implied provision of said contract was that the Defendant, as Seller, would reasonably cooperate with Plaintiff, as Buyer, in providing the Buyer the information from which Buyer could attempt to obtain 'financing' to effect the purchase. That the information which Buyer reasonably needed from Seller for this purpose included copies of any existing leases upon the property and information of the amount of rental payments received and receivable from such property, inventory records, sales records,

and expense records from all stores in said shopping center operated by Defendant himself."

It was also alleged that plaintiff was informed and believed that if the seller had provided said records and information and:

"[I]f that information contained substantiation of the shopping center's financial records and status, the Plaintiff could have obtained necessary loans and financing to consummate the purchase from Defendant, pursuant to said contract and within the time period provided for in said contract, and that Plaintiff would have been able to consummate said purchase."

The complaint further alleged:

"That said shopping center was a going operating retail concern at the date of the execution of this contract herein, and that an implied provision of said contract was that Defendant would, until consummation of the sale, maintain the operation of said shopping center complex in a manner similar to its operation prior to that date and would maintain the inventories of stores operated by him during the period prior to consummation of the sale; that Defendant has breached his said obligation under the contract in that he has caused or permitted the inventories in the stores operated by him to be so depleted as to cause irreparable damage to the good will of the business concerned, thereby adversely affecting the value of said complex."

The complaint alleges that the seller has breached his contract in the manner stated and that plaintiff is ready and able "to pay the purchase price of said contract if he is able to procure financing therefor as set forth in the contract."

Count I of the contract prays an order for specific performance of seller in providing the information, documents and data from which buyer can determine whether financing may be procured, and that seller be ordered "if such financing can be procured" to specifically perform the contract by conveying the real estate, fixtures, personal property and inventory to buyer, and that seller be ordered to maintain operation of the shopping center in accordance with the contract pending determination whether financing may be procured.

Count II prayed damages arising from seller's delay, including the profit which buyer would have realized from the operation of the center since July 1, 1978, to the date when plaintiff was placed in possession in the sum of $200,000.

The trial court filed a memorandum which noted that the contract was minimal in specifying the obligations to be performed; that the contract contained no provision for data concerning leases, inventories and associated records; that the court could not presently order a

conveyance because the buyer could not ensure that he would be ready to accept until matters outside the contract had been performed. The court further found that the contract did not state what fixtures, personal property and inventory the seller was to provide. For such reason the trial court concluded that the contract was illusory and not enforceable through specific performance.

The seller points out certain key issues concerning the right to specific performance, *i.e.*, whether a court of equity may grant specific performance of the asserted implied warranties and promises that the plaintiff alleges, and then supervise the case to determine whether the buyer could obtain a loan and in such event decree specific performance, and whether there is any specific precedent or authority for granting specific performance of the obligations so implied.

The buyer's allegation that the customs and usages of lending institutions created an implied obligation to furnish all records and documents is not suggested in the agreement. By the language of his pleading such custom or usage was not known to the buyer until the unidentified institution so "advised him." When the buyer undertook to obtain a loan no allegation suggests that the seller had been advised of the custom. There is no persuasive reason to believe that the parties contemplated an implied obligation to perform acts or produce data as to matters and things not known to them at the time the agreement was executed.

An implication of a contractual obligation as argued by buyer has not been implied by law as some warranties are implied at law, nor is there any known statutory implication of such an obligation.

In *Magna Development Co. v. Reed* (1964), 228 Cal. App. 2d 230, 39 Cal. Rptr. 284 (see Annot., 26 A.L.R.3d 855, 861 (1969)), a buyer contracted to give a note and mortgage for the land, and the agreement further provided that the purchase-money mortgage to the seller would be subordinate to a subsequent construction loan. Neither the amount of that loan nor its terms and conditions were stated. In an action declaring the agreement void and unenforceable, the buyer contended that evidence of custom and usage in the making of such construction loan should be admitted to ascertain the reasonable intent of the parties. In rejecting the argument, the court pointed out "a well-established rule that evidence of usage and custom may be introduced as an instrument of interpretation, but may not be used to create a contract." 228 Cal. App. 2d 230, 240, 39 Cal. Rptr. 284, 291.

In *Hux v. Raben* (1966), 74 Ill. App. 2d 214, 222, 219 N.E.2d 770, 773, aff'd (1967), 38 Ill. 2d 223, 230 N.E.2d 831, the court, citing *Cefalu v. Breznik* (1958), 15 Ill. 2d 168, 170, 154 N.E.2d 237, 239, stated:

"To entitle a party to specific performance the contract must be

so certain and unambiguous in its terms and in all its parts that a court can require the specific thing contracted for to be done. * * * Where there is ambiguity, doubt, or uncertainty with respect to its terms, equitable enforcement by specific performance will be denied."

While conceding that there are distinguishing facts, buyer cites *Kovacs v. Krol* (1944), 385 Ill. 593, 53 N.E.2d 456, and *Nyder v. Champlin* (1948), 401 Ill. 317, 81 N.E.2d 923. Neither case supports a thesis of an obligation of a party to perform an act not stated in the contract. In *Kovacs*, the purchase agreement was upon the contingency that buyer obtain a mortgage loan. The buyer procured a loan upon appraisal and approval and executed a mortgage for the purchase price. The court would not permit the seller to claim forfeiture of the contract for failure to procure a mortgage within 30 days for the seller had failed to produce evidence of title as required by the contract. The latter obligation was specifically pleaded.

In *Nyder*, the agreement was contingent upon buyer obtaining a mortgage of $16,000. The buyer could not obtain a mortgage in that amount but tendered full purchase price due with funds obtained in addition to the mortgage. The court granted specific performance as against seller's argument that the buyer failed to borrow $16,000 as provided in the contract. The essence of the cited cases is that the buyer was able, as well as willing, to perform the contract at the time that specific performance was sought. Here, the complaint shows, upon its face, that the buyer was not able to perform.

■■■ To accept buyer's argument a court, acting as in equity, must imply a contractual obligation in seller to submit all leases, inventory records, sales and expense records and rents received and receivable for examination as demanded by one or more lending institutions who are not parties to the contract. We are not prepared to hold that a court of equity may find that the seller had an obligation implied in the terms of this contract to deliver for examination his complete records to any person or entity buyer may choose. As one such lending institution may refuse a loan, or as a buyer might shop for mortgage terms, the obligation to the seller might continue for an unknown number of examinations or to an indefinite number of examining organizations, each of which might have different demands to be made upon the seller. A court of equity will not enter interlocutory orders for successive examinations for various entities who may consider buyer's loan application, or otherwise supervise the process of making the business loan. *Yonan v. Oak Park Federal Savings & Loan Association* (1975), 27 Ill. App. 3d 967, 326 N.E.2d 773.

The complaint alleges that the shopping center was a going, operating retail concern and that an implied provision of the contract was

that seller would maintain operation and inventories apparently from the date of the agreement to the date possession was transferred. Again, the contract shows no suggestion of the sale of a going business. The complaint, at best, alleges that unidentified persons operated unidentified businesses on the premises. Obviously, the seller cannot direct the maintenance of such enterprises as to inventory or their operation. The statement that the contract extended to "all real and personal property" is not directed or limited to the seller's own business, if any there is. The contract does not refer to any business of the seller. The contract contains no suggestion of an inventory of any business at any time. An implication that the contract contemplated that seller maintain an inventory as of the date of the agreement is not apparent in the language used.

The intention of the parties is to be determined from the language of the agreement and the words should be given their common and generally accepted meaning. (*Turner v. Shirk* (1977), 49 Ill. App. 3d 764, 364 N.E.2d 622; *Bonde v. Weber* (1955), 6 Ill. 2d 365, 128 N.E.2d 883.) Buyer's argument requires introduction into the agreement of words and terms not used in the writing to create obligations not expressed in the contract and not within the ambit of the words and terms which are expressed in such contract.

■■ The rule is that a contract to be specifically enforced must be definite, certain, complete, and unambiguous in its requirements in a suit for specific performance. The court has no authority to compel a party to do something which he did not agree to do. *Banks v. Gregory* (1959), 16 Ill. 2d 227, 157 N.E.2d 12.

There is no contention that the buyer has tendered performance within the contract stated, or that he is able to do so. Upon the conclusions stated, it is unnecessary to consider the issues of mutuality and fairness of the contract which have been argued.

The order of the trial court is affirmed.

Affirmed.

MILLS, P. J., and CRAVEN, J., concur.