URS CORPORATION, Plaintiff-Appellee, *v.* ROBERT LEE ASH *et al.*, Defendants.—(WAYNE B. TAYLOR *et al.*, Defendants-Appellants.)

Fourth District    No. 16991

Opinion filed October 21, 1981.

230

Robert L. Gibson and Alfred H. Kreckman, Jr., both of Massey, Anderson & Gibson, of Paris, for appellants.

Phebus, Tummelson, Bryan & Knox, of Urbana (Joseph W. Phebus and Janet A. Flaccus, of counsel), for appellee.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal concerns a series of easements acquired for the underground storage of natural gas in Edgar County by Peoples Gas Light and Coke Company (Peoples). All of the easements were conveyed by Peoples to the plaintiff by a special warranty deed. Certain owners of the underlying fees refused to recognize the conveyance and the plaintiff thereupon filed in the circuit court of Edgar County a 23-count complaint for declaratory judgment (Ill. Rev. Stat. 1979, ch. 110, par. 57.1) seeking a declaration of its rights in the easements. Each count related to a separate easement.

Nearly all of the counts were settled, but six of them were not, and those six are the subject of this litigation. As to four of them, the trial court entered summary judgment in favor of the plaintiff after striking seven of the defendants' nine affirmative defenses. As to the remaining two, the trial court, after a brief bench trial, entered judgment in favor of the plaintiff. This appeal followed.

A brief background statement is first in order. Further recitation of facts will appear throughout this opinion as necessary for clarity in discussing the issues raised. Peoples embarked upon a project to store natural gas underground in connection with sales to its customers in the Chicago area. In pursuit of the project, it began acquiring easements in 1972 and in April and July of 1973 it obtained certificates of convenience and necessity from the Illinois Commerce Commission (Commission) under the provisions of section 50 and 55 of the Public Utilities Act (Ill. Rev. Stat. 1971, ch. 111 2/3, pars. 50, 56) which included powers of eminent domain under the provisions of "An Act concerning the use of eminent domain in connection with the transportation, distribution, or storage of gas, and granting rights for the storage of gas in property of the State of Illinois and political subdivisions, municipal corporations and quasi-municipal corporations therein" (Ill. Rev. Stat. 1971, ch. 104, par. 104 *et seq.*, now Ill. Rev. Stat. 1979, ch. 96½, par. 5501 *et seq.*) (Gas Storage Act).

After investing over $3 million in the project, Peoples arrived at the decision that it was no longer feasible in view of an existing surplus of natural gas and therefore sought to dispose of the easements which it had acquired. It approached several other natural gas distributing companies without success and ultimately arrived at an agreement with the plaintiff which agreed to purchase the easements for $385,000. Plaintiff's purpose for the use of the easements is to store compressed air as a part of its experimental project for the generation of electrical power.

Since the issues and the bases of our decision are somewhat different as to the easements upon which the trial court entered summary judgment (Taylor easements) and the ones upon which judgment after bench trial was entered (Porter easements), we must discuss them separately.

All of the Taylor easements were executed on a preprinted form supplied by Peoples which in pertinent part is read as follows:

"For and in consideration of the payment of $5.00 per acre, the receipt of which is hereby acknowledged, Owner hereby GRANTS, CONVEYS and WARRANTS unto THE PEOPLES GAS LIGHT AND COKE COMPANY (hereinafter referred to as "Company"), its successors and assigns, the exclusive right and easement to conduct geological surveys in, under and upon said land; to construct, develop, operate and maintain a gas storage project under and upon said land; to inject natural gas or other gases or vapors (all hereinafter referred to as "gas") into any geological strata, 500 feet or more below the surface of said land, not containing oil and gas in commercial quantities (all such strata being hereinafter referred to as the "Storage Reservoir"); to rework and/or plug existing or plugged or abandoned wells penetrating the storage reservoir; to store gas in the Storage Reservoir and to retain possession of the gas so stored as personal property; to withdraw the gas (with all substances absorbed) from the Storage Reservoir; to drill, install, operate, maintain, renew, move, remove and/or abandon in place, at locations selected by Company, wells, pipelines, roads, cathodic protection, electric lines and all other surface or subsurface facilities as Company deems necessary or desirable for the geological survey or a gas storage project, with the right of ingress and egress on said land and the right to do and perform all such other acts and things as may be necessary for the geological surveys, and the construction, development, operation, and maintenance of a gas storage project. Owner hereby expressly releases and waives any right of homestead."

The Porter easements were typewritten and in pertinent part are read as follows:

"The grantors * * * convey * * * to Peoples Gas Light & Coke Co. * * *, grantee, the exclusive right, privilege and easement to introduce and store gas in all formations at depths in excess of 500 feet below the surface of the real estate * * * and to retain possession of gas so stored as personal property, and to remove gas so stored together with any absorbed water vapor and to maintain the integrity of the cap-rock formation overlying each storage formation and to do and perform such acts as may be necessary or convenient for all of the foregoing purposes."

In addition, the Porter easements contained a clause not found in the Taylor easements. This clause provides, "In the event grantee shall permanently discontinue the storage of gas under the real estate in question, grantee shall prepare and place of record an instrument releasing the rights herein granted."

The epicenter of the controversy among the parties is the affirmative defenses and their striking as a matter of law by the trial court. There were nine of them in all; seven of them applied to all the easements; the eighth is not appealed; and the ninth applied only to the Porter easements. As previously indicated, summary judgment was entered as to the Taylor easements in favor of the plaintiff after the seven were struck, and the trial court after hearing held in favor of the plaintiff as to the Porter easements.

Without detailing each of the seven concerned with the Taylor easements, we may group them into three principal categories: (1) abandonment of the easements, (2) scope of the easements, and (3) eminent domain consequences. As will be seen from our discussion of them, each impinges on the other to a certain extent, the defense of scope being the most determinative.

As to scope, defendants claimed that the easements by their own terms were limited to natural gas and that air was not included within the meaning of gas. As a subsidiary argument, they further maintained that the Commerce Commission orders referred only to natural gas, and not air, and that the plaintiff was not subject to Commission regulation, thus depriving them of the protections afforded by the orders issued to Peoples. Plaintiff maintains that the language of the easements, "natural gas or other gases or vapors," is broad enough to include compressed air and that since the easements were acquired by voluntary grant, the question of governmental regulation becomes irrelevant.

While the trial court assigned no reasons in its order for striking the scope defense, the record indicates that it resorted to a dictionary for a definition of "gas" and in its brief plaintiff argues dictionary definitions. Defendants claim that this indicates an ambiguity in the use of the term and therefore evidence of surrounding circumstances should have been allowed.

Thus arises a nettlesome question as to the determination of whether an ambiguity exists and the use of extrinsic evidence in making such a determination.

The Illinois courts are agreed that the question of ambiguity is one of law to be determined by the court. *Chicago Investment Corp. v. Dolins* (1981), 93 Ill. App. 3d 971, 418 N.E.2d 59; *Board of Education v. Chicago Teachers Union, Local 1* (1980), 89 Ill. App. 3d 861, 412 N.E.2d 587.

However, there is a split of authority as to how the court should go

about making the determination. A long line of older cases adopted what has been called the "four corners" or "plain meaning" test. Apparently this is the test which the trial court applied in the instant case. The rule is stated as follows:

"An agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence." *Western Illinois Oil Co. v. Thompson* (1962), 26 Ill. 2d 287, 291, 186 N.E.2d 285, 287.

The rule has been followed in a variety of factual situations. Examples are: *Saddler v. National Bank* (1949), 403 Ill. 218, 85 N.E.2d 733; *Pioneer Trust & Savings Bank v. Lucky Stores, Inc.* (1980), 91 Ill. App. 3d 573, 414 N.E.2d 1152; *Maloney v. Maloney* (1980), 88 Ill. App. 3d 146, 410 N.E.2d 416; *Herbert Shaffer Associates, Inc. v. First Bank* (1975), 30 Ill. App. 3d 647, 332 N.E.2d 703.

The "four corners" test represents a mechanical approach to a difficult problem and possesses two flaws in that it assumes a precision of language which cannot exist and further that it places a trial judge in the uncomfortable position of determining the true intent of the parties in a transaction to which he is far removed both in time and circumstance. However, whatever he decides, he can be solaced by the knowledge that he is sustained by what seems an unimpeachable rule of law.

This is not to say that the "four corners" test does not have a place in the administration of contract law. When statutes or rules of law give a fixed meaning to particular words or phrases, or when certain technical words or phrases acquire a definite meaning, the test is clearly applicable. The parties are presumed to have used the fixed and definite meaning.

Another line of cases found its genesis in *Ortman v. Stanray Corp.* (7th Cir. 1971), 437 F.2d 231. Interpreting Illinois law, that court said:

"In entering judgment for defendant on the contract cause of action, the trial court accepted the defendant's argument that a condition precedent to the admission of any evidence relating to the meaning of the contract was an initial determination by the court that the contract was ambiguous. Though language in some of the Illinois cases supports this view, we believe that it is incorrect as a general statement of the parol evidence rule. If relevant testimony concerning the circumstances surrounding the signing of a contract is offered, it should generally be heard. The meaning of words cannot be ascertained in a vacuum. The function of interpretation of a contract is to ascertain the intention of the parties as manifested by the words they used to evidence their agreement. This cannot normally be done by an isolated

inquiry limited to the four corners of a document; it requires that a court attempt to place itself in the same situation as that of the parties at the time of the execution of the contract.

> The standard to be used in interpreting an integrated contract is:
>> [T]he meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration. * * * Restatement of Contracts §230 (1932).
>
> Thus, relevant parol evidence is always admissible to assist in the determination of what the words used in an integrated writing mean; and the parol evidence rule is placed in its proper role of focusing interpretation on the meaning of the terms embodied in the writing and of rendering all evidence inoperative to vary those terms once their meaning has been discovered. Admitting evidence of prior negotiations and agreements for the purpose of discovering the meaning of the terms used in the integration does not violate the parol evidence rule. 'Such testimony does not vary or contradict the written words; it determines that which cannot be varied or contradicted.' [Citing Corbin on Contracts §579, at 421-422 (1960).]" 437 F.2d 231, 234-35. (Footnotes omitted except Corbin cited in footnote 7, bracketed above.)

Two other opinions of the same court have followed *Ortman*. *International Minerals & Chemical Corp. v. Husky Oil Co.* (7th Cir. 1973), 485 F.2d 153; *Lucie v. Kleen-Leen, Inc.* (7th Cir. 1974), 499 F.2d 220.

More significantly, the *Ortman* rule has been followed in two recent decisions of the appellate court in *Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745, and *Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 364 N.E.2d 939.

We believe that the line of cases commencing with *Ortman* are well reasoned and represent a more workable rule. Such a rule will permit the trial judge to determine with greater certainty whether in fact an ambiguity does exist or whether the parties were at one in their understanding of the language used. If he does find ambiguity, then the usual rules of construction will obtain; if no ambiguity appears, or if it appears that a word or phrase has a fixed meaning either by law or by usage and custom, then the "four corners" rule will be applied. In either event, the true intent of the parties will be better served.

■■ We therefore hold that in the instant case the trial court was in error in striking defendants' affirmative defenses two and three relating to the scope of the easements.

We turn next to the affirmative defenses concerned with abandonment. Defendants claim that the easements were abandoned by nonuse

and by petition, order, petition for rehearing and further order by Peoples pursuant to section 49a of the Public Utilities Act (Ill. Rev. Stat. 1975, ch. 111 2/3, par. 49a). They maintain that nonuse is shown by the failure to store natural gas in the easements and that the various documents before the Commission speak of "abandonment." Plaintiff counters that there is no nonuse since the easements were assigned to it by Peoples for storage of compressed air and that the documents before the Commission related to abandonment of the project, not of the easements.

It is true that an easement granted for a particular purpose terminates as soon as such purpose ceases to exist, is abandoned, or is rendered impossible of accomplishment. (28 C.J.S. *Easements* §54 (1941).) However, forfeiture of easements is not favored and an easement can be extinguished only in some mode recognized by the law. (28 C.J.S. *Easements* §52 (1941); 25 Am. Jur. 2d *Easements and Licenses* §101 (1966).) It follows that under the circumstances of the instant case the question of abandonment is closely related to, and derivative from, the question of scope discussed above.

If, after hearing evidence on the question of the scope of the language "natural gas or other gases or vapors," the trial court determines that compressed air is within its ambit under the intent of the parties, then there would be no abandonment in the legal sense. On the other hand, if compressed air is beyond the scope of the easements, then there could be abandonment by reason of nonuse. In our opinion the pleadings before the Commission are relevant only as to the intent of Peoples; the question of abandonment must be settled by the language of the easements themselves.

■■ We therefore hold that the trial court was in error in striking defendants' affirmative defenses one and seven relating to abandonment.

■■■ The two affirmative defenses sounding in eminent domain require less extended discussion. Defendants in one of them claimed that the easements were obtained under duress and threat of eminent domain proceedings. The record discloses that of the four Taylor easements here under litigation, three of them were acquired before Peoples obtained the Commission order authorizing eminent domain proceedings, and there is no indication that the fourth was obtained in any manner except by voluntary conveyance. Further, and more importantly, the point is not argued in defendants' brief and is therefore waived under Supreme Court Rule 341(e)(7) (73 Ill. 2d R. 341(e)(7)).

The second affirmative defense in the eminent domain area alleged that a reversion by operation of law occurred when the public purpose was no longer being served. Defendants cite *Scheller v. Trustees of Schools* (1978), 67 Ill. App. 3d 857, 384 N.E.2d 971. That case does so hold, but it is not in point. As has already been said, there is no indication

in the record that any of the easements were acquired by eminent domain.

The trial court was therefore correct in striking defendants' affirmative defenses four and six relating to eminent domain.

Defendants' last affirmative defense as regards the Taylor easements is that through Peoples' assignment of the easements defendants lost the protections afforded by the orders of the Commission. Plaintiff responds that there are adequate protections within the easement grants themselves, that defendants have no rights in the Commission orders, and in any event the plaintiff is subject to regulation by the Environmental Protection Agency.

■■ The record does disclose some seven protective restrictions in the Commission orders which are made to apply to easements to be acquired as well as those already acquired; the record also discloses a number of restrictions within the easement grants themselves; but none of these can be compared with any purported restrictions of the Environmental Protection Agency, because none of the latter are shown. The trial court had no basis for comparison, and therefore it was error to strike that affirmative defense as a matter of law.

To sum up, then, concerning the four Taylor easements: we find that there were genuine issues of material fact relating to the affirmative defenses of abandonment (Nos. 1 and 7), to the affirmative defenses of scope (Nos. 2 and 3), and to the affirmative defense of protection (No. 5); that there were no genuine issues of material fact as to the affirmative defenses concerning eminent domain (Nos. 4 and 6). We therefore conclude that the trial court erred in entering summary judgment for the plaintiff as to the Taylor easements. Its action in striking defendants' affirmative defenses Nos. 1, 2, 3, 5 and 7 is reversed; its action in striking defendants' affirmative defenses Nos. 4 and 6 is affirmed.

We turn next to the Porter easements on which the trial court held an evidentiary hearing. All of the seven affirmative defenses discussed in connection with the Taylor easements were likewise stricken by the trial court. In addition, defendants raised a ninth affirmative defense to the Porter easements only, that being the release required when the storage of gas was discontinued. The principal basis for the trial court's decision as observed in its written order was that "air" was included within the meaning of "gas." We have already dealt with this issue in discussing the Taylor easements and the trial court's finding in this respect is subject to the same infirmity. We note that a dictionary definition of "gas" was argued to the trial court and presumably influenced it. Without attempting to pass on the merits of the matter, we note in passing the definition of "gas" as set forth in Webster's Second New International Dictionary 1036 (1959):

238

"In popular usage, any gas, or gaseous mixture, *with the exception of atmospheric air; * * *.*" (Emphasis added.)

██ We therefore hold that the trial court's judgment as to the Porter easements was against the manifest weight of the evidence and must be reversed.

For the foregoing reasons, the summary judgment in favor of the plaintiff and against the defendants as to the Taylor easements is reversed; the judgment in favor of the plaintiff and against the defendants as to the Porter easements is likewise reversed; and the cause is remanded to the circuit court of Edgar County for further proceedings in accordance with the views expressed herein.

Affirmed in part, reversed in part, and remanded with directions.

TRAPP, P. J., and LONDRIGAN, J., concur.