THE VILLAGE OF GRANDVIEW, Plaintiff-Appellee, *v.* THE CITY OF SPRINGFIELD, Defendant-Appellant.
THE VILLAGE OF JEROME, Plaintiff-Appellee, *v.* THE CITY OF SPRINGFIELD, Defendant-Appellant.

Fourth District Nos. 4—83—0620, 4—83—0621 cons.

Opinion filed March 26, 1984.—Rehearing denied April 24, 1984.

Robert M. Rogers, Assistant Corporation Counsel, of Springfield, for ap-

pellant.

Heckenkamp & Simhauser, P.C., of Springfield, for appellees.

JUSTICE TRAPP delivered the opinion of the court:

In these consolidated cases, plaintiffs, the villages of Jerome and Grandview, each brought an identical accounting action against defendant, the city of Springfield. The villages asked the city to account for rates it charged the villages under long-term, bulk-water-supply contracts. The city appeals from an order of the circuit court of Sangamon County granting the villages' motions for summary judgment. At issue is the proper construction of the water-supply contracts.

In July 1971, the village of Jerome entered into a contract with the city under which the city was to supply water to Jerome for the next 40 years. Under section 2 of the contract, the city could increase or decrease the annual rate to reflect an increase or decrease in the average operation cost and the debt service for long-term funded debt. On October 8, 1974, the village of Grandview entered into a similar contract with the city. Grandview's contract ran until September 1, 1979, but it was to remain in effect on a year-to-year basis until one party gave notice of termination.

On December 23, 1969, the city passed an ordinance authorizing the issuance of water revenue bonds. The bonds were issued in 1970, and the city set aside $2.25 million of the proceeds for a future water-supply reservoir, called the Lake II project. On December 17, 1974, the city passed a similar ordinance, and $9 million of the proceeds from the second bond issue were set aside for the Lake II project. The water rate the city charged the villages increased every year between 1972 and 1977. Part of this increase was due to the debt service on the bonds issued for the Lake II project.

The city started purchasing land for the Lake II project in 1970. On December 13, 1976, however, the circuit court of Sangamon County dismissed a petition the city had filed to condemn land for use in constructing Lake II. The court held that, because the city council had not yet authorized the construction of Lake II, there was no showing of necessity to take the land by eminent domain. On January 18, 1978, the city council adopted a report that concluded the Lake II project could not be justified on a cost-effective basis for many years in the future. The report recommended that construction of the project be postponed, but land already acquired be retained on the assumption that Lake II would someday be built. The city also appealed

the dismissal of the condemnation suit. Based upon the city council's adoption of the report, the appellate court in *City of Springfield v. Miller* (1978), 55 Ill. App. 3d 1121 (Rule 23 order), held that the issue was moot and affirmed the trial court.

The city earned rental and crop-sharing income from land it purchased for the Lake II project. The city credited this income to its "Waterworks Bond Construction Fund Account." In addition, the city invested unexpended funds received from the two bond issues, and this income was also placed into the construction-fund account. The city did not include any of this income in calculating the villages' water rates under the contracts.

On May 8, 1978, Jerome filed a two-count complaint against the city. Jerome maintained that the rental, crop-sharing, and interest income received from the bond proceeds should have been credited to paying off the interest on the bond issues; therefore, the complaint alleged the city had overcharged Jerome and prayed for an accounting. Grandview filed an identical complaint on June 8, 1979.

Both villages then filed motions for summary judgment. The city filed objections and its own motion for summary judgment in each case. The trial court found that there was no genuine issue as to any material fact and granted the villages' motions for summary judgment. The court found that, under the proper construction of section 2, the villages were entitled to credit in the computation of rate increases for all income the city received from the bond proceeds. The court, therefore, ordered the city to account and to give credit to the villages by way of a refund or credit on future charges.

■ A preliminary issue involves appellate jurisdiction. The trial court ordered the city to account to the villages; therefore, the court must have retained jurisdiction to approve the accounting. Previously, a judgment that disposed of the rights of the parties was final and appealable, although it reserved an incidental accounting for future consideration. (*Barnhart v. Barnhart* (1953), 415 Ill. 303, 308, 114 N.E.2d 378, 381; *Altschuler v. Altschuler* (1948), 399 Ill. 559, 569, 78 N.E.2d 225, 230.) This rule, however, was abrogated. (*Burtell v. First Charter Service Corp.* (1979), 76 Ill. 2d 427, 432, 394 N.E.2d 380, 382.) Supreme Court Rule 304(a) states that a final judgment that disposes of less than all the claims involved in the action may be appealed only if the trial court makes an express, written finding that there is no just reason for delaying enforcement or appeal. (87 Ill. 2d R. 304(a).) The trial court made the proper written finding in this case. Because an accounting action has always been considered a separate matter properly resolved in a separate proceeding, the judg-

ment orders are appealable. *2416 Corp. v. First National Bank* (1980), 91 Ill. App. 3d 961, 969, 415 N.E.2d 420, 427; *Pinelli v. Alpine Development Corp.* (1979), 70 Ill. App. 3d 980, 1008, 388 N.E.2d 943, 963.

The resolution of this case depends upon the construction given to section 2 of the water-supply contracts, which allows the city to increase or decrease the rate charged "to reflect an increase or decrease in the average operation cost, and the debt service for long term funded debt." The issue is whether the interest, rental, and crop-sharing income should be included in calculating the "average operation cost, and the debt service for long term funded debt."

A contract must be enforced according to its terms or not at all, and a court has no authority to compel the party to do something other than that which he has agreed to do in his contract. (*Sweeting v. Campbell* (1956), 8 Ill. 2d 54, 58, 132 N.E.2d 523, 525.) When construing a contract, the court's primary objective is to ascertain the intent of the parties as evidenced by the language used. If the terms of a contract are unambiguous, then the intent of the parties must be ascertained solely from the words used; a contract is not rendered ambiguous simply because the parties failed to agree upon its meaning. (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 806, 443 N.E.2d 36, 41; *Joseph v. Lake Michigan Mortgage Co.* (1982), 106 Ill. App. 3d 988, 991-92, 436 N.E.2d 663, 665-66.) A contract is ambiguous if its terms are capable of being understood in more than one sense because either an indefiniteness of expression or a double meaning is attached to them. (106 Ill. App. 3d 988, 991, 436 N.E.2d 663, 665.) Ambiguity is a question of law for the court to decide. *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 233, 427 N.E.2d 1295, 1299.

The city asserts that the contract is unambiguous and must be enforced according to its plain meaning. The villages contend that section 2 of the contract is ambiguous and that the parties intended to use the income from bond proceeds in calculating the water rates. The contract, however, states that two factors are to be considered in setting the annual water rate. Section 2 defines the first factor, "average operation cost": "Said average operation cost shall be based on total gallons sold and the following items, exclusive of depreciation; source of supply, purification, distribution, accounting and collecting, and general or administrative expense." These words should be given their common and generally accepted meaning. (*Crane v. Mulliken* (1980), 86 Ill. App. 3d 1076, 408 N.E.2d 778.) The definition does not mention income from bond proceeds, nor do its terms imply that the income should be included in calculating average operation cost.

■ The second factor to be considered is "debt service for long term funded debt." The villages concede that, when they signed the contracts, this term meant the interest and fractional part of the principal that the city would be required to pay yearly to retire the bonds. Again, income from bond proceeds is not included in this definition. The amount or source of any income does not affect the amount of debt service or the average operation cost; therefore, no ambiguity exists.

The villages maintain that the meaning of the contracts is uncertain because the parties never considered, when the contracts were written, the possibility that the city would delay construction of Lake II. When the contracts were written, all the parties assumed that the city would build Lake II in the near future. The villages assert that "debt service should now be interpreted to include income earned on the bond proceeds."

In reality, the villages are arguing that a change of circumstances, not an ambiguity, exists. In construing a contract, however, the primary objective is to determine and give effect to the parties' intentions at the time they entered into the contract. (*Cedar Park Cemetery Association, Inc. v. Village of Calumet Park* (1947), 398 Ill. 324, 75 N.E.2d 874.) The court cannot add to contracts of parties elements which they did not themselves provide, nor protect one of the contracting parties against subsequent contingency, which would have been advantageous to him, had he but foreseen it. *Noll Baking & Ice Cream Co. v. Sparks Milling Co.* (1940), 304 Ill. App. 624, 632, 26 N.E.2d 425, 429.

The city's bond ordinances offer further proof that the contracts are not ambiguous. The 1969 ordinance was in effect before the parties made either contract. The ordinance requires the city to pay off principal and interest on the bonds from the "Bond and Interest Sinking Fund Account," which the city is to fund from charges it makes for water sold. The ordinance also requires the city to credit investment income from bond proceeds to the construction-fund account. This account is to fund improvements and extensions of the waterworks system; therefore, the city cannot use the investment income to pay off principal and interest on the bonds.

■ The villages contend that the ordinances were not made a part of the contract, and that they cannot be required to be aware of the city's ordinances. When a municipal ordinance is applicable to a contract, however, it becomes by operation of law an implied term of the contract. *Burns v. Regional Transportation Authority* (1982), 112 Ill. App. 3d 464, 472, 445 N.E.2d 348, 354; *Lavine Construction*

*Co. v. Johnson* (1981), 101 Ill. App. 3d 817, 819, 428 N.E.2d 1069, 1071; *Bethel Terrace, Inc. v. Village of Caseyville* (1976), 43 Ill. App. 3d 276, 279, 356 N.E.2d 1269, 1272.

 Finally, the villages argue that the city is reaping a windfall. They assert that they must be given credit for the income on bond proceeds to avoid this inequitable result. The city, however, is not reaping any windfall. The ordinances require the city to place the income into the construction-fund account, and the city has done so. The funds in this account can only be expended for improvements and extensions of the waterworks system, including Lake II. Moreover, the city's own residents receive no credit for income from bond proceeds when their water rates are calculated.

Even if the city does reap a windfall, the court is not authorized to construe into contracts provisions which are not there. (*Abingdon Bank & Trust Co. v. Bulkeley* (1945), 390 Ill. 582, 62 N.E.2d 447.) Unless a contract is ambiguous, the court must determine its meaning solely from the words used; the court will not add to a contract provisions which are not there simply to reach a more equitable result. *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 432, 70 N.E.2d 604, 606; *National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 689, 355 N.E.2d 43, 47.

For the foregoing reasons, the trial court's orders are reversed.

Reversed.

GREEN and WEBBER, JJ., concur.