WILLIAM E. RINEY *et al.*, Plaintiffs-Appellants, v. WEISS AND NEUMAN SHOE COMPANY, Defendant-Appellee.

Fourth District   No. 4—90—0652

Opinion filed August 6, 1991.

A. Clay Cox and James P. Ginskey, both of Hayes, Schneider, Hammer, Miles & Cox, of Bloomington, for appellants.

Stephen Novack and Karen L. Levine, both of Novack & Macey, of Chicago, and Robert S. White, of Costigan & Wollrab, P.C., of Bloomington, for appellee.

JUSTICE SPITZ delivered the opinion of the court:

Plaintiffs appeal from a trial court's order granting defendant summary judgment in this suit for conversion. We affirm.

Plaintiffs in this matter are former shareholders of the Susan Lee Corporation (SLC). Plaintiff William Riney owned 50% of the SLC stock, and plaintiffs Deborah Campbell and Paula Woolen each owned 25% of the stock. SLC was the sole owner of Roland's of Bloomington, Inc. (Roland's), which operated retail clothing stores in Champaign and Bloomington, Illinois.

On November 7, 1986, L&L Acquisitions, Inc. (L&L), purchased all shares of SLC stock from plaintiffs for $700,000. At the time of the sale, Roland's was indebted to the State Bank of Lincoln (Lincoln) on two promissory notes in the amounts of $200,000 and $400,000 (Lincoln notes). To secure these notes, Lincoln held a security interest in the following assets of Roland's:

"[A]ccounts receivable, inventory, equipment, leasehold improvements, documents, instruments, furniture, fixtures, money, chattel paper, consumer goods and general intangibles together with the proceeds of all such property and accessions thereto; and specifically including but not limited to goodwill and contract rights."

Lincoln perfected this security interest by filing a financing statement as required by section 9—302 of the Uniform Commercial Code—Secured Transactions (UCC) (Ill. Rev. Stat. 1989, ch. 26, par. 9—302).

The stock purchase agreement between L&L and plaintiffs provided that L&L would pay $300,000 in cash at closing, and finance $400,000 in the form of three promissory notes: a note to Riney for $200,000, and a note each to Campbell and Woolen for $100,000. To secure these three notes, plaintiffs took a second security interest in:

"All inventory, stock-in-trade, trade fixtures, furniture of debtor's stores known as 'Roland's' at two locations: Eastland Mall, E. Empire, Bloomington, McLean County, Illinois, and Market Place Mall, North Neil Street, Champaign, Champaign County, Illinois."

L&L filed a financing statement for this security interest.

Lincoln consented to L&L's purchase of the SLC stock on certain conditions. First, Lincoln's security interest in Roland's assets was re-

tained and kept of record. Next, Riney was required to personally sign the two Lincoln notes as an additional obligor. Finally, all plaintiffs were required to pledge the $300,000 cash payment from L&L as additional collateral for the $400,000 Lincoln note.

The UCC security agreement between L&L and plaintiffs contained the following language:

> "7. That DEBTOR will not sell or otherwise transfer the Collateral or any interest therein and will not permit any other lien or security interest to be attached thereto *without the written consent of the SECURED PARTY.*" (Emphasis added.)

The stock purchase agreement between L&L and plaintiffs, executed the same day as the security agreement, included an addendum containing the following language:

> "1. L&L Acquisitions, Inc., nor any representative on its behalf, *shall remove any money or other asset from Roland's* of Bloomington, Inc. or the Susan Lee Corporation, nor shall any successor to those corporate entities remove any money or asset from the retail stores operated by those corporations at Bloomington and Champaign *except to meet payroll obligations, other day-to-day operating expenses of those two stores, accounts payable for those two stores, or existing debt to State Bank of Lincoln.*

> * * *

> 4. Subject only to the payroll obligations *** *the undersigned agree that the primary obligation of Roland's of Bloomington, Inc. shall be the payment of outstanding promissory notes held by State Bank of Lincoln.*" (Emphasis added.)

Representatives of L&L, Riney as chairman of the board of SLC, and all plaintiffs individually, signed this addendum. Although a representative of Lincoln was present at this closing, no representative of Lincoln signed the addendum.

On December 23, 1986, Roland's leased its shoe department and sold its entire shoe inventory and certain fixtures to defendant. The agreement provided that defendant would pay 30% of the retail value of the shoes, plus an amount for the fixtures. In addition to this, defendant would pay Roland's 11% of its net shoe sales, and advertise and modernize the shoe department. Roland's applied the $62,950.40 payment from the sale of the shoe department to the Lincoln notes.

On September 2, 1987, plaintiffs and Lincoln filed their initial complaint against defendant for conversion, asserting that the sale to defendant violated their security agreements. Roland's had gone into bankruptcy. On November 7, 1989, Lincoln withdrew from the case af-

ter the Lincoln notes were paid during the bankruptcy proceeding. Plaintiffs filed a motion for summary judgment, which was denied, and later filed a second motion for summary judgment. Defendant thereafter filed its motion for summary judgment.

On May 2, 1990, a hearing was held on the motions for summary judgment, during which the trial court denied plaintiffs' motion, granted defendant's, and entered final judgment in favor of defendant. The trial court granted defendant's motion on the ground that the sale was authorized by the language of the addendum, which permitted sales of the collateral as long as the proceeds were used to make payment on the Lincoln notes.

On May 31, 1990, plaintiffs filed a motion for reconsideration of the trial court's ruling. Plaintiffs argued for the first time that the parties did not intend the addendum to authorize Roland's to sell an entire department as long as the money was used to retire the Lincoln notes, and that the addendum was ambiguous as such. Attached to plaintiffs' motion were three affidavits never before submitted to the trial court. These affidavits were from Riney; Terry Brown, the president of Lincoln; and Donald Wilcox, the attorney who drafted the addendum and security agreements for plaintiffs. The substance of these affidavits was that the parties did not intend the addendum to authorize the sale of the shoe department. Plaintiffs also attached deposition testimony on which they had not previously relied. The deposition testimony consisted of plaintiffs' assertions that they were unaware of the sale of the shoe department until after it had occurred, and the statement of Steven Lewark, secretary and treasurer of L&L, that he read the secured promissory note given by L&L to plaintiffs, and saw that it contained a reference to the security agreement.

Defendant filed a motion to strike plaintiffs' motion, and argued that the affidavits and deposition testimony had been available but not offered or relied upon by plaintiffs in connection with the motions for summary judgment. Defendant also argued that plaintiffs' argument concerning the ambiguity of the addendum had not been argued in their previous motion for summary judgment.

On August 24, 1990, a hearing was held on plaintiffs' motion for reconsideration. The trial court denied defendant's motion to strike and considered plaintiffs' affidavits, deposition testimony, and argument that the addendum was ambiguous. However, the court denied plaintiffs' motion and stated:

> "Here, in my opinion, this Paragraph One [of the Addendum] is very, very crystal clear on its face *** and to me there is no

ambiguity in this paragraph one at all. It is very clear to me that they [Roland's] can sell these things [the Merchandise] as long as the money went to the Bank, and it went to the Bank, so the Plaintiffs in this case did not have their interest, their secured interest under these agreements violated by the Defendant ***.''

Plaintiffs subsequently filed this appeal, in which they ask this court to vacate or reverse the summary judgment entered by the trial court and grant any and all relief to which they may be entitled on appeal.

■ Plaintiffs' claim is for conversion of collateral. Section 9—306(2) of the UCC, as adopted in Illinois, provides:

"Except where this Article otherwise provides, a security interest continues in collateral notwithstanding sale, exchange or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise, and also continues in any identifiable proceeds including collections received by the debtor." (Ill. Rev. Stat. 1989, ch. 26, par. 9—306(2).)

Where a debtor makes an unauthorized disposition of collateral which is subject to a security interest, the security interest continues in the original collateral while in the possession of the purchasor or transferee. The secured party may thus repossess the collateral from the purchasor or transferee in an action for conversion. *Hills Bank & Trust Co. v. Arnold Cattle Co.* (1974), 22 Ill. App. 3d 138, 140, 316 N.E.2d 669, 671.

The trial court held, in granting summary judgment, that the addendum was clear and unambiguous, and was the written consent required by the security agreement to sell the collateral. Summary judgment may only be granted where the pleadings, depositions, and affidavits show that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c); *Hagy v. McHenry County Conservation District* (1989), 190 Ill. App. 3d 833, 842, 546 N.E.2d 77, 83.

■ Plaintiffs argue on appeal that ambiguities exist in the addendum, both on its face and after considering extrinsic evidence. We find, however, that plaintiffs have waived this argument for review. Plaintiffs first argue that the word ''remove'' in the addendum is ambiguous. Plaintiffs failed to present this argument to the trial court at any time, even in their motion for reconsideration. This argument is thus waived for review, as issues not raised in the trial court are generally waived on appeal. (*Dawdy v. Sample* (1989), 178 Ill. App. 3d

118, 128, 532 N.E.2d 1128, 1136.) Additionally, plaintiffs argued during the hearing on the motions for summary judgment that the addendum was clear and straightforward.

■■ ■ Plaintiffs also argue that the addendum is in conflict with the security agreement and other extrinsic evidence. This argument has also been waived as plaintiffs failed to submit the argument to the trial court until the motion for reconsideration. The purpose of motions for reconsideration of the entry of summary judgment is not "to excuse [a] failure to present" previously available evidence or issues which were not brought to the court's attention prior to the challenged ruling. (*Gliwa v. Washington Polish Loan & Building Association* (1941), 310 Ill. App. 465, 478, 34 N.E.2d 736, 743.) The *Gliwa* court explained that "[i]t is not intended [that] cases should be heard piecemeal under this [summary judgment] procedure." (*Gliwa*, 310 Ill. App. at 478, 34 N.E.2d at 743.) Moreover, courts agree that new material should not be considered and a summary judgment order ought not be vacated where "the material had been available prior to the filing of the [summary judgment] motion and the subsequent issuance of the order." *Artis v. Fibre Metal Products* (1983), 115 Ill. App. 3d 228, 232, 450 N.E.2d 756, 759; accord *Bank of Pawnee v. Joslin* (1988), 166 Ill. App. 3d 927, 934, 521 N.E.2d 1177, 1182.

Plaintiffs had ample opportunity to submit this argument to the trial court, and all the evidence submitted with their motion for reconsideration was available at the time of the motion for summary judgment. Plaintiffs instead chose to argue in their motion for summary judgment that the addendum was clear and straightforward, and intentionally chose not to address defendant's argument that the proceeds of the sale were used to make payment on the Lincoln notes.

We further note that the trial court was correct in its ruling. The primary object of the construction of a contract is to give effect to the intention of the parties. The intention of the parties is not to be determined from detached portions of a contract or from any clause or provision standing by itself. Instead, the contract is to be construed as a whole. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 283, 154 N.E.2d 683.) The *Martindell* court further stated:

"In general, the intention of the parties is to be determined from the final agreement executed by them, rather than from preliminary negotiations and agreements [citation] but previous agreements, negotiations and circumstances may be considered in determining the meaning of specific words and clauses. [Citations.] Similarly, under well recognized exceptions to the [parol] evidence rule, extrinsic evidence is admissible to show the

meaning of words used in a contract where there is an ambiguity, or when the language is susceptible of more than one meaning." *Martindell*, 15 Ill. 2d at 283-84, 154 N.E.2d at 689.

Plaintiffs argue here that a court may look to parol or extrinsic evidence provisionally to determine whether an ambiguity exists in the writing. (*Baird & Warner, Inc. v. Ruud* (1976), 45 Ill. App. 3d 223, 359 N.E.2d 745; *Keep Productions, Inc. v. Arlington Park Towers Hotel Corp.* (1977), 49 Ill. App. 3d 258, 364 N.E.2d 939; see also *Design Studio International, Inc. v. Chicago Title & Trust Co.* (1989), 185 Ill. App. 3d 797, 541 N.E.2d 1166.) Defendant disagrees and argues that parol evidence may not be considered in construing a contract unless the contract is ambiguous. If the contract is clear and unambiguous, defendant argues, the parties' intent must be determined from the plain language of the contract. *Tishman Midwest Management Corp. v. Wayne Jarvis, Ltd.* (1986), 146 Ill. App. 3d 684, 689, 500 N.E.2d 431, 434.

■ This court has accepted the reasoning of *Baird & Warner* and *Keep Productions*. (See *URS Corp. v. Ash* (1981), 101 Ill. App. 3d 229, 427 N.E.2d 1295; *Rittenhouse v. Tabor Grain Co.* (1990), 203 Ill. App. 3d 639, 561 N.E.2d 264.) In *URS Corp.*, this court held that the question of ambiguity is one of law to be determined by the court. (*URS Corp.*, 101 Ill. App. 3d at 233, 427 N.E.2d at 1299.) Then, noting that there was a split of authority on the issue of whether extrinsic evidence may be used to determine whether an ambiguity exists in a writing, this court stated:

"The 'four corners' test represents a mechanical approach to a difficult problem and possesses two flaws in that it assumes a precision of language which cannot exist and further that it places a trial judge in the uncomfortable position of determining the true intent of the parties in a transaction to which he is far removed both in time and circumstance." (*URS Corp.*, 101 Ill. App. 3d at 234, 427 N.E.2d at 1299.)

This court thus adopted the rule that parol or extrinsic evidence may be used by a court to determine whether an ambiguity exists in the contract:

"Such a rule will permit the trial judge to determine with greater certainty whether in fact an ambiguity does exist or whether the parties were at one in their understanding of the language used. If he does find ambiguity, then the usual rules of construction will obtain; if no ambiguity appears, or if it appears that a word or phrase has a fixed meaning either by law or by usage and custom, then the 'four corners' rule will be ap-

plied. In either event, the true intent of the parties will be better served." *URS Corp.*, 101 Ill. App. 3d at 235, 427 N.E.2d at 1300.

In the instant case, the trial court considered extrinsic evidence and concluded that no ambiguity existed in the addendum. We agree. A contract is ambiguous if its terms are capable of being understood in more than one sense because either an indefiniteness of expression or a double meaning is attached to them. (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 797, 461 N.E.2d 1031, 1034.) A provision is not rendered ambiguous simply because parties do not agree on its meaning. *Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 458 N.E.2d 480.

■ Plaintiffs' first argument, that the word "remove" in the addendum is ambiguous, is without merit. Plaintiffs argue that the security agreement prohibits any "sale" without written authorization, and that the addendum is not the required written authorization because it does not refer to "sale" of assets, but "removal." Plaintiffs conclude that it is not clear that the parties intended the word "remove" to include a sale. This assertion is without merit for several reasons. First, plaintiffs admit in their brief that the word "remove" includes retail sales. Moreover, the addendum provides that assets could not be removed except to meet certain obligations, all of which require money to perform. Thus, the language necessarily includes a sale.

■ Next, plaintiffs argue extrinsic evidence reveals ambiguities in the addendum. We disagree. Plaintiffs first argue here that the security agreement provided there was to be no sale of the collateral. Roland's, however, was a retail store which sold the collateral at retail. Plaintiffs argue that L&L would never have executed a security agreement that would prohibit it from performing the sole business of Roland's, retail sales. Plaintiffs believe this raises an ambiguity.

In rejecting this argument, we note that plaintiffs ignore important language in the security agreement. The security agreement provides there shall be no sale of the collateral, *except* with plaintiffs' written consent. The addendum provides that no assets shall be removed, except to meet certain obligations, one of which is payment on the Lincoln notes. There is no conflict here, as the addendum provides L&L with the authorization to sell the collateral, as long as the proceeds were used to meet the obligations listed. Supporting this view is paragraph 4 of the addendum, which provides that the primary purpose of Roland's was to pay off existing debt on the Lincoln notes.

■ Plaintiffs next argue that, at the time of closing, Lincoln held a security interest on the same collateral prohibiting the sale or transfer of the collateral without Lincoln's written authority, yet Roland's sold as a retail store. Moreover, Brown, the president of Lincoln, did not sign the addendum, and Lincoln never consented to the sale of the collateral to defendant. The fact that Lincoln held a security interest in the collateral and allowed retail sales is irrelevant, as Lincoln is not a party to this case. Lincoln was also not a party to the sale of the SLC stock to L&L. As such, it did not need to sign the addendum. Lincoln protected itself by requiring Riney to sign the Lincoln notes personally and to pledge the $300,000 down payment for the stock as collateral. Moreover, although Lincoln did not sign the addendum, it was present at the closing, and thereby implicitly gave its consent to the addendum. As such, this evidence is irrelevant.

■ Finally, plaintiffs argue that Wilcox stated in his affidavit that plaintiffs were concerned about "large-scale sales" of the assets pledged as security. Wilcox further stated:

"[He] recall[ed] conversations between and among [L&L], Mr. Riney, and Mr. Brown that none of the assets pledged as security by L&L Acquisitions, Inc.[,] and Rolands [sic] of Bloomington, Inc.[,] were to be sold or transferred except by normal day[-]to[-]day retail sales. That any sale outside of the normal day[-]to[-]day retail sales would necessarily have to have the signed written consent of [plaintiffs and Lincoln.]"

Wilcox also stated in his affidavit that the plaintiffs had concerns about how the proceeds from retail sales would be used. Thus, the addendum was drawn. Wilcox concluded in his affidavit that it was not the intent of the parties that the addendum would provide the written authorization for the sale to defendant.

Wilcox's statement is entirely consistent with the trial court's interpretation of the addendum, and raises no ambiguities. Wilcox notes that plaintiffs had two concerns: (1) proceeds from retail sales, which would not be applied to the Lincoln notes, and (2) large-scale sales of inventory, which were pledged as security for the Lincoln notes. To protect plaintiffs' interests, the security agreement required written authorization for *any* sale, whether retail or large scale. Plaintiffs' written consent was then provided by the addendum, which protected their interests by requiring the proceeds of any sale to be applied to certain obligations of Roland's, one of which was the Lincoln notes. Moreover, it is irrelevant whether Lincoln gave written consent, as it is not a party to this case.

Plaintiffs' entire argument is also without merit because, in arguing that an ambiguity exists, plaintiffs seek to add a new term to the contract, the limiting term "retail sales." Even when language in a contract is ambiguous, extrinsic evidence may not be used to change or vary the agreement. *Baird & Warner*, 45 Ill. App. 3d at 229, 359 N.E.2d at 750.

Plaintiffs finally argue that there are factual disputes outside the security agreement and addendum which need to be resolved before the ambiguities in the documents can be construed. We, however, find no ambiguities in the documents, and thus need not respond to this argument. We conclude by noting that the contract was not ambiguous, and that the trial court was correct in finding no material issue of fact existed. Thus, summary judgment was appropriate. Accordingly, the trial court is affirmed for the reasons stated herein.

Affirmed.

LUND, P.J., and GREEN, J., concur.