J.M. BEALS ENTERPRISES, INC., Successor to Industrial Hard Chrome, Inc., Plaintiff-Appellee, v. INDUSTRIAL HARD CHROME, LTD., Successor to C.G. Therkildsen, Inc., Defendant-Appellant (American Mutual Insurance Company of Boston, Defendant-Appellee).

First District (6th Division)   No. 1—88—2425

Opinion filed February 16, 1990.—Rehearing denied March 27, 1990.

Biestek & Scott, Ltd., of Arlington Heights (Edward A. Scott III, of counsel), for appellant.

Morgan, Lanoff, Denniston & Madigan, Ltd., of Chicago (Samuel M. Lanoff and Mark L. Dressel, of counsel), for appellee J.M. Beals Enterprises, Inc.

JUSTICE RAKOWSKI delivered the opinion of the court:

This is an appeal from a summary judgment in favor of plaintiff J.M. Beals Enterprises, Inc. (Beals, Inc.), successor to Industrial Hard Chrome, Inc. (Industrial, Inc.). In granting the motion, the trial court ruled that under the terms of a purchase and sales agreement (P&SA), defendant Industrial Hard Chrome, Ltd. (Industrial, Ltd.), successor to C.G. Therkildsen, Inc. (Therkildsen, Inc.), must pay the retrospective premiums charged to Beals, Inc., by defendant American Mutual Insurance Company of Boston (American). On appeal, Industrial, Ltd., raises the single issue of whether the trial court erred in granting summary judgment for Beals, Inc., because it determined, as a matter of law, that Industrial, Ltd., was only entitled to the surplus generated by American after the final policy audit and not entitled to any and all refunds or credits issued while the audit was still in process and some premiums might still be due.

This appeal arises out of an action for declaratory judgment filed by Beals, Inc., to determine the legal effect of certain terms in a P&SA with the defendant Therkildsen, Ltd.

The undisputed facts are that on or about October 18, 1985, J.M. Beals (Beals); Industrial, Inc.; Charles George Therkildsen (Therkildsen); and Therkildsen, Inc., entered a P&SA for the transfer of assets from Industrial, Inc., to Therkildsen, Inc., which renamed the transferred company Industrial, Ltd. Article I of the P&SA provided for the transfer of the assets "owned by the Company at closing." Article I also contained the following provision: "Buyer shall assume only the liabilities and obligations itemized in Schedule B at closing which has been approved in writing by the parties hereto and which are part of this Agreement as though specifically attached hereto." Article IV(H) stated that all outstanding contracts were listed in schedule C, a listing which included "Workmen's Comp. Insurance."

The parties agree that one of the items transferred from Industrial, Inc., to Industrial, Ltd., was an insurance policy for workers' compensation and employer's liability issued by American to Industrial, Inc. The parties agree further that the premiums owed to American before the transfer of assets were not listed in the itemization of

liabilities in schedule B.

The American policy had been purchased by Beals to provide coverage on Industrial, Inc., effective February 1, 1985, to February 1, 1986. That policy provided for retrospective premium calculations. Thus, Beals would pay initial premiums, and American would later audit the account and issue refunds, credits, or charges in accordance with policy provisions. On October 26, 1985, after the sale, American cancelled the policy for Industrial, Inc., and issued a new policy to cover Industrial, Ltd.

After the cancellation of the policy for Industrial, Inc., American audited the account. As a result of the audit process, American sent Industrial, Ltd., a refund for $9,070 on January 20, 1986, and two credits for $4,417 and $685 on January 31, 1986, for a total of $14,172.00. In the complaint for declaratory judgment, Beals, Inc., claimed that it and not Industrial, Ltd., should have received this money as a refund from the cancelled policy. Since Beals, Inc., is no longer advancing this claim on appeal, it now effectively concedes that Industrial, Ltd., is entitled to this money.

As a result of the same auditing process, American sent an invoice for $4,816 in premiums due to Therkildsen, who forwarded it to Beals for payment. Beals paid that amount to American on June 17, 1986. Later American claimed an additional retrospective premium charge of $1,578. At present the parties dispute whether Beals, Inc., or Industrial, Ltd., should have been responsible for $6,394, which was the final total of premiums due.

On June 1, 1988, the trial court heard motions for summary judgment filed simultaneously by Beals, Inc., Industrial, Ltd., and American. At that time, Industrial, Ltd., argued that the retrospective premium charges due to American had not appeared in schedule B of the P&SA, which listed all liabilities Therkildsen, Inc., or Industrial, Ltd., would assume. Beals, Inc., argued that the American policy was an asset transferred in the sale but the exact value of the asset could not be determined until after American had audited the policy history. In effect, Beals, Inc., asserts that the amounts due to American were not liabilities but simply setoffs against the amounts American would pay Industrial, Ltd.

After hearing the arguments, the trial court held that the $4,816 already paid by Beals and the $1,578 still unpaid were setoffs against the $14,172 which Industrial, Ltd., had already received. Thus, Industrial, Ltd., should have received only $7,778. Consequently, the court entered judgments against Industrial, Ltd., for $1,578 to American and $4,816 to Beals, Inc., on the theory that Industrial, Ltd., had re-

ceived too much money because the true value of the policy had not been determined until after American had completed the audit and placed all charges against the policy refunds.

Summary judgment is proper where the parties agree on the relevant facts and the record presents purely questions of law. (*International Insurance Co. v. Melrose Park National Bank* (1986), 145 Ill. App. 3d 286, 288, 495 N.E.2d 1197, 1198.) When parties agree that the language of a contract is clear and unambiguous, then construing the contract is a matter of law appropriate for summary judgment. *La Salle National Bank v. Illinois Housing Development Authority* (1986), 148 Ill. App. 3d 158, 161, 498 N.E.2d 697, 699.

A court must construe the meaning of a contract by looking at words used and cannot interpret the contract in a way contrary to the plain and obvious meaning of these words. (*Johnstowne Centre Partnership v. Chin* (1983), 99 Ill. 2d 284, 287, 458 N.E.2d 480, 481.) If the contract is clear and unambiguous, a reviewing court must enforce the contract as written. (*A.A. Conte, Inc. v. Campbell-Lowrie-Lautermilch Corp.* (1985), 132 Ill. App. 3d 325, 329, 477 N.E.2d 30, 33.) Furthermore, a court may not add provisions to an unambiguous contract even if these make the contract more equitable. *Lakeland Property Owners Association v. Larson* (1984), 121 Ill. App. 3d 805, 809-10, 459 N.E.2d 1164, 1168.

A contract term is ambiguous when its terms can reasonably be interpreted in more than one way. (*Zurich Midwest, Inc. v. St. Paul Fire & Marine Insurance Co.* (1987), 159 Ill. App. 3d 961, 963, 513 N.E.2d 59, 60.) The mere fact that parties disagree on some term, however, is not a sign that the term is ambiguous. *Johnstowne Centre*, 99 Ill. 2d at 288, 458 N.E.2d at 481.

In the absence of ambiguity, a court must treat the language in a contract as a matter of law and construe the contract according to its language, not according to constructions which the parties place on this language. (*Lenzi v. Morkin* (1984), 103 Ill. 2d 290, 293, 469 N.E.2d 178, 179.) Unless the contract clearly specifies its own meanings, the court must interpret the words or language of the contract with their common and generally accepted meanings. (*Crane v. Mulliken* (1980), 86 Ill. App. 3d 1076, 1081, 408 N.E.2d 778, 781.) Furthermore, the court must place the meanings of words within the context of the contract as a whole. *Board of Trade v. Dow Jones & Co.* (1983), 98 Ill. 2d 109, 122-23, 456 N.E.2d 84, 90.

In this case, all three parties filed motions for summary judgment and agreed as to the facts and contract language. On appeal, their positions have not changed. Even Beals, Inc., now agrees that, if the

American policy audit had yielded only premiums due, Beals, Inc., would have had to pay these premiums because they were not listed as transferred liabilities on schedule B of the P&SA. Furthermore, Beals, Inc., now concedes that Industrial, Ltd., is entitled to the net surplus generated by the American policy during the final audit process. Therefore, if the audit had yielded only surplus finds, these would belong solely to Industrial, Ltd.

Both Beals, Inc., and Industrial, Ltd., agree that the contract itself is not ambiguous. The parties also agree that Industrial, Ltd., should receive the surplus credits from the American policy but did not assume liability for retrospective insurance premiums. The parties only disagree about whether the retrospective payments are, as a matter of law, liabilities or simply setoffs against the policy surplus. Industrial, Ltd.'s entire premise is that the retrospective premiums were a liability. It argues this irrespective of the fact that if one awaited the final audit there would only be a surplus.

■ The dispute simply is whether the language of the contract means that Industrial, Ltd., is entitled to all surplus funds generated at any point during the audit process or only the net surplus remaining after the audit was completed. The contract is silent on this point. Since there is no ambiguity, the court must interpret the contract as a matter of law by giving the instrument a "fair and reasonable interpretation based on consideration of all its language and provisions." *Shelton v. Andres* (1985), 106 Ill. 2d 153, 159, 478 N.E.2d 311, 314.

■ Industrial, Ltd., has not given any reason, nor can we conceive of any, why the deficit or surplus should be determined on a day-by-day basis. At the time the P&SA was executed, it was clear that the American policy was of undetermined value. It could become either an asset or liability depending on future audits. As it turned out, the policy provided a surplus, that is, more credits than additional premiums and the trial court so held. This, we hold, is a reasonable interpretation of the contract. Indeed, if the periodic audits had been replaced by one final audit, the parties would be in agreement.

For the reasons stated, the judgment of the trial court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and McNAMARA, J., concur.