U S G INTERIORS, INC., Plaintiff-Appellant, v. COMMERCIAL AND AR-CHITECTURAL PRODUCTS, INC., Defendant-Appellee.

First District (5th Division)   No. 1—91—1581

Opinion filed January 15, 1993.

Sachnoff & Weaver, Ltd., of Chicago (Joel S. Feldman and Michael M. Kaplan, of counsel), for appellant.

Oppenheimer, Wolff & Donnelly, of Chicago (David C. Bohrer, of counsel), for appellee.

JUSTICE COUSINS delivered the opinion of the court:

In this case, the plaintiff, U S G Interiors, Inc. (USG), appeals from a grant of summary judgment by the trial court in favor of the defendant, Commercial And Architectural Products, Inc. (CAP), on a breach of contract claim. For the year beginning January 1, 1989, USG seeks proration and reimbursement from CAP for a prorated portion of personal property taxes that USG paid on some of the assets purchased by CAP. In granting the motion, the trial court ruled that the contract was unambiguous and required USG to pay the personal property tax liability for the entire year.

The issues presented for review are (1) whether the trial court erred in finding the general allocations of liabilities language in the purchase agreement to be unambiguous concerning the personal property taxes; (2) whether the trial court erred in failing to consider pro-

visionally extrinsic evidence to determine whether language in the contract was ambiguous; and (3) whether the trial court erred in failing to consider the intent of the parties when it determined the meaning of the word "incur."

We affirm.

BACKGROUND

USG manufactures and markets a diverse product line of ceiling wall and floor systems. It sold certain assets to CAP. Some of the assets purchased by CAP are located in Georgia, Texas, and Ohio. These States impose personal property taxes.

The parties executed a purchase agreement (Asset Purchase Agreement) on or about December 21, 1988, and the closing occurred on January 27, 1989. There is no express provision allocating personal property tax liability. The agreement, however, does include a general section for the allocation of liabilities. The pertinent language in the purchase agreement provides that except for assumed liabilities, "Purchaser shall assume no costs, liabilities, obligations, or duties of the Seller *** prior to the Closing Date of any nature *** *incurred* or *accrued*, *** including *** any *** state *** or other taxes except as provided in the Real Estate Contract." (Emphasis added.) Under the terms of the agreement, the payment of personal property taxes are not listed as an "Assumed Liability."

The assets located in Georgia, Texas, and Ohio were subject to personal property taxes incurred throughout calendar year 1989. USG paid all of the personal property tax bills, which amounted to approximately $188,000. The assets purchased by CAP from USG exceeded $20 million.

USG contends that personal property tax liability can only be prorated based on time of ownership; that because CAP consisted of former senior USG executives, the parties knew that the personal property tax liability had always been incurred on USG's books based on time of ownership; that the custom and practice of the industry is to prorate; and that any ambiguity should be interpreted against CAP since it drafted section 3.5.

CAP contends that the purchase agreement was unambiguous and that the personal property taxes imposed by statutes for Georgia, Texas, and Ohio attach on January 1 of the calendar year thus creating liability for the person owning the property on January 1.

USG brought this action against CAP alleging breach of contract and in the alternative unjust enrichment. The unjust enrichment claim is not a part of this appeal.

Both parties filed motions for summary judgment based upon the written contract. The trial court granted CAP's motion for summary judgment and denied USG's motion. Appeal was taken from this order.

OPINION

I

We note in the case *sub judice* that one of the contentions by USG before the trial court was that the contract was ambiguous.

USG asserts that the trial court erred in finding that the general allocations of liabilities language in the purchase agreement was unambiguous concerning the personal property taxes. We find no error.

■■ The trial court's grant of summary judgment in favor of CAP was proper. Summary judgment is proper procedure where only construction of an agreement is at issue. (*Bates v. Select Lake City Theater Operating Co.* (1979), 78 Ill. App. 3d 153, 154, 397 N.E.2d 75, 77.) Questions of law are appropriate for summary judgment. And the meaning and construction of a written instrument are questions of law for the court where there is no ambiguity created by the language used, or where some disputed extrinsic facts, such as the particular meaning attached to the words by the parties, create an ambiguity in the meaning of the instrument. (*Northern Illinois Construction Co. v. Zale* (1985), 136 Ill. App. 3d 822, 824-25, 483 N.E.2d 1013, 1015.) Construing the language of a contract is a matter of law appropriate for summary judgment. (*In re Estate of Bresler* (1987), 159 Ill. App. 3d 535, 539, 510 N.E.2d 1057, 1060.) The determination of whether contract language is ambiguous is a question of law. (*1000 Condominium Association v. Carrier Corp.* (1989), 180 Ill. App. 3d 467, 469, 535 N.E.2d 1144, 1146.) Construction of a clear and unambiguous contract is a matter of law appropriate for summary judgment. *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.* (1990), 194 Ill. App. 3d 744, 748, 551 N.E.2d 340, 342.

The Illinois Supreme Court has held that courts must initially determine, as a question of law, whether the language of a purported contract is ambiguous as to the parties' intent and, if the language of the contract is clear and explicit, then courts, as a matter of law, must derive the parties' intent and the meaning of the instrument solely from the writing itself. *Rakowski v. Lucente* (1984), 104 Ill. 2d 317, 323, 472 N.E.2d 791, 794; *Quake Construction, Inc. v. American Airlines, Inc.* (1990), 141 Ill. 2d 281, 288, 565 N.E.2d 990, 994.

The pertinent language of the contract between USG and CAP provides:

"3.5. *Excluded Liabilities*. Except for Assumed Liabilities, Purchaser shall assume no costs, liabilities, obligations or duties of Seller or relating in any way to the Assets or the operations of the Business prior to the Closing Date of any nature whatsoever, whether contractual or otherwise, incurred or accrued, absolute or contingent, direct or indirect, including without limitation any cost, obligation or duty under or for *** (iv) any federal, state, local or foreign, income, sales, excise or other taxes except as provided in the Real Estate Contract."

■ In its brief, USG interprets the phrase "incur or accrue," as it relates to personal property taxes, as meaning incurring or accruing with time. As such, USG contends that since the closing occurred on January 27, 1990, USG owned the assets for only one month of the tax year and, accordingly, incurred liability for only one-twelfth of the personal property tax bill. This argument is not persuasive. We note that the contract uses "incurred or accrued" and not "incur" or "accrue." "Incurred or accrued" reflects the past while "incur or accrue" reflects the future. "Incur" means to become liable or subject to. Black's Law Dictionary 768 (6th ed. 1991).

The trial court interpreted the language of the contract to mean that CAP assumed no tax liabilities which USG had incurred. The trial court was correct in finding the meaning of the word "incurred" to be unambiguous in the contract and the trial court's finding was reasonable.

A court must construe the meaning of a contract by looking at words used and cannot interpret the contract in a way which is contrary to the plain and obvious meaning of these words. *J.M. Beals*, 194 Ill. App. 3d at 748, 551 N.E.2d at 342.

USG also contends that the trial court erred in finding that the contract was unambiguous regarding the obligation of USG to pay the Georgia, Texas, and Ohio personal property taxes. We find no error.

The Georgia statute provides that taxes shall be charged against the owner of the property if the owner is known (Ga. Code Ann. §48—5—9 (Michie 1982)), that each return by a taxpayer shall be for property held and subject to taxation on January 1 next preceding each return (Ga. Code Ann. §48—5—10 (Michie 1982)), and that nothing in the code section should be construed to impose liability upon any person for any property which was not owned January 1 of the applicable tax year (Ga. Code Ann. §48—5—23(d) (Michie 1982)).

The Texas statute provides that property taxes are the personal obligation of the person who owns or acquires the property on January 1 of the year for which the tax is imposed and that a person is not relieved of the obligation because he no longer owns the property. Tex. Tax Code Ann. §32.07 (West 1982).

The Ohio statute provides that all taxable personal property and credits used in a business shall be listed as of the close of business of the last day of December and that the subsequent transfer of taxable property shall not authorize the taxpayer to omit the same from his return (Ohio Rev. Code Ann. §5711.03 (Anderson 1991)).

Citing *Crown Pipe & Foundry, Inc. v. Davis* (1960), 167 N.E.2d 390, 394, *Amoco Oil Co. v. G. Sims & Associates* (1982), 162 Ga. App. 307, 291 S.E.2d 128, and *State v. Smith* (Tex. 1968), 434 S.W.2d 342, USG further asserts that the January 1 date creates an inchoate and contingent lien in favor of the State and that the Ohio, Georgia, and Texas courts have ruled that the contingent lien is null and void until the State publishes a notice of delinquency and files the lien.

■ However, these cases are inapposite. *Crown* involves an estoppel issue, and *Amoco Oil* and *Smith* involve the perfection of tax liens. The issue in this case is whether a legal obligation to pay property taxes had been incurred. USG's cases confirm the distinction between a lien and an incurred legal obligation.

In examining the applicable Georgia, Texas, and Ohio statutory provisions, it is clear that USG was solely liable to the States for the payment of the personal property taxes as USG was the sole owner of the property as of January 1, 1989 (December 31, 1988, in accordance with the Ohio statute).

Moreover, the mere fact that parties disagree on a term of a contract is not a sign that the term is ambiguous, and unless the agreement unequivocally specifies its own meanings, the court must interpret the words of the contract with their common and generally accepted meanings. *La Salle National Bank v. Wieboldt Stores, Inc.* (1965), 60 Ill. App. 2d 188, 202, 208 N.E.2d 845, 853; *J.M. Beals*, 194 Ill. App. 3d at 748, 551 N.E.2d at 342.

We further note that USG contends that the language of the contract must be construed against the drafter, CAP. We disagree. Where the language of a contract is clear and unambiguous, this rule of construction is inapplicable. *Western Illinois Oil Co. v. Thompson* (1962), 26 Ill. 2d 287, 291, 186 N.E.2d 285, 287; *Smith v. Johnston* (1979), 73 Ill. App. 3d 601, 606, 391 N.E.2d 1092, 1096; *Puckett v. Oelze* (1985), 134 Ill. App. 3d 1020, 1025, 481 N.E.2d 867, 871.

## II

■■ USG contends that the trial court erred in failing to consider provisionally extrinsic evidence to determine whether the language in the contract was ambiguous. Specifically, USG sought the admission of extrinsic evidence regarding usage and custom relative to the construction of the agreement. We find no error.

We are mindful that some Illinois appellate courts have held that a court may permit the admission of parol or extrinsic evidence provisionally to determine whether an ambiguity exists in the writing. *U I D C Management, Inc. v. Sears Roebuck & Co.* (1986), 141 Ill. App. 3d 227, 230, 490 N.E.2d 164, 166 (the appellate court affirmed the portion of the trial court's judgment finding that terms of the contract were unambiguous); *Design Studio International, Inc. v. Chicago Title & Trust Co.* (1989), 185 Ill. App. 3d 797, 803, 541 N.E.2d 1166, 1169 (the appellate court supported the trial court's decision to consider extrinsic evidence because the lease was ambiguous); *Riney v. Weiss & Neuman Shoe Co.* (1991), 217 Ill. App. 3d 435, 443, 577 N.E.2d 505, 509 (the appellate court affirmed the trial court's consideration of extrinsic evidence and its conclusion that no ambiguity existed).

However, when interpreting a written agreement, evidence of custom and usage may be used only when the writing is ambiguous. (*Ambarann Corp. v. Old Ben Coal Corp.* (1946), 395 Ill. 154, 164, 69 N.E.2d 835, 840; *Bean v. Norfolk & Western Ry. Co.* (1980), 84 Ill. App. 3d 395, 406, 405 N.E.2d 418, 426.) Here, the writing is unambiguous, and the general rule that the trial court must derive the parties' intent solely from the writing itself is applicable. *Rakowski,* 104 Ill. 2d at 323, 472 N.E.2d at 794; *United Equitable Insurance Co. v. Reinsurance Co. of America, Inc.* (1987), 157 Ill. App. 3d 724, 731, 510 N.E.2d 914, 919; *Quake Construction,* 141 Ill. 2d at 288, 565 N.E.2d at 994.

## III

■■ Finally, USG asserts that the trial court failed to consider the intent of the parties when it determined the meaning of "incur." We disagree.

When reduced to a writing, an agreement must be presumed to speak the intention of the parties who signed it. The intention with which it was executed must be determined from the language used. Such language is not to be changed by extrinsic evidence. *Western Illinois Oil Co. v. Thompson,* 26 Ill. 2d at 291, 186 N.E.2d at 287.

Absent ambiguity in the written terms of an instrument, the instrument provides the sole criterion of intention of the parties. *Country Service & Supply Co. v. Harris Trust & Savings Bank* (1981), 103 Ill. App. 3d 161, 165, 430 N.E.2d 631, 634.

The court does seek to determine the intention of the parties in construing a contract. However, in order to determine intent, the classic rule of construction requires that a court simply look to the contract as ultimately executed. When the contract terms are clear and unambiguous, they must be given their ordinary and natural meaning, and no parol evidence may be considered to vary the meaning of the terms. *Hammel v. Ruby* (1985), 139 Ill. App. 3d 241, 247, 487 N.E.2d 409, 413; *Manor Healthcare Corp. v. Soiltest, Inc.* (1989), 192 Ill. App. 3d 934, 940, 549 N.E.2d 719, 723-24.

For the foregoing reasons, we affirm the trial court's grant of summary judgment in favor of the defendant, CAP.

The judgment of the trial court is affirmed.

Affirmed.

McNULTY and MURRAY, JJ., concur.