2021 IL App (1st) 200496-U

No. 1-20-0496

Order filed March 25, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| RTC INDUSTRIES, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff/Counterdefendant-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 L 50510 |
| | ) | |
| MAKRAY MANUFACTURING COMPANY, | ) | Honorable |
| | ) | Daniel P. Duffy, |
| Defendant/Counterplaintiff-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Justices Reyes and Martin concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's counterclaim was subject to dismissal with prejudice because the terms of the parties' contract were not ambiguous and established that defendant could not plead or prove a set of facts for defendant's claims of breach of contract and relief based on a lien against plaintiff's tools.

¶ 2   Defendant Makray Manufacturing Company (Makray) appeals the trial court's dismissal with prejudice under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)) of Makray's second amended counterclaim against plaintiff RTC Industries, Inc.

(RTC). The trial court ruled that Makray could not plead or prove a set of facts that would entitle it to a claim of breach of contract or relief under the Illinois Tool and Die Lien Act (Act) (770 ILCS 105/1 *et seq.* (West 2018)).

¶ 3    On appeal, Makray argues it sufficiently pled its contract cause of action by alleging that the contract was ambiguous and the parties' course of conduct and trade usage showed RTC's obligation to pay Makray for excess raw materials, finished goods and work in progress. Makray also argues it sufficiently pled a cause of action under the Act for over $376,000 because Makray had possessory lien rights on RTC's tools since RTC failed to pay for the excess materials and finished and unfinished goods.

¶ 4    For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                            I. BACKGROUND

¶ 6    Makray, a plastic processor, had been doing business with RTC for several years and had possession of RTC's tools and related components, which Makray used to produce plastic parts and assemblies for RTC. Makray would send its written quotation form to RTC, and RTC would accept that quotation by its responsive written purchase order. Each quotation form and purchase order stated that it constituted the entirety of the parties' agreement. The parties do not dispute that Makray specifically invoiced RTC for the products RTC specifically ordered through those quotation forms and purchase orders and RTC fully paid those invoices.

¶ 7    When the parties ceased doing business with each other, Makray claimed that RTC owed $376,099.55 for excess raw materials, finished products and work in progress, which were

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

worthless to anyone but RTC. Accordingly, Makray refused to return RTC's tools and asserted a possessory lien against the tools pursuant to the Act.

¶ 8    RTC then filed a replevin action to recover its tools from Makray. Shortly thereafter, RTC posted a bond for the disputed amount as a substitute for the tools, and the trial court granted RTC's replevin action.

¶ 9    Meanwhile, Makray filed a counterclaim against RTC. Makray's second amended counterclaim alleged RTC breached the parties' contract by failing to give Makray reasonable notice of termination and failing to honor the terms established through the course of performance, course of dealing, and customs and usages of the plastic processing industry (count I). Makray also alleged that it had a possessory lien on RTC's tools pursuant to section 105/1(A) of the Act (770 ILCS 105/1(A) (West 2018)) (count II).

¶ 10    RTC moved the court to dismiss Makray's counterclaim under section 2-615 of the Code, arguing that RTC never agreed to pay for excess raw materials, finished products and work in progress that remained after the satisfaction of RTC's specific orders. RTC also argued that trade custom and usage could not be used to support Makray's alleged agreement about compensation for excess materials and products because the terms of the operative contract were clear. Furthermore, RTC argued that Makray could not use the Act, which provides for the attachment of a lien where a balance due exists on a contract, to create an obligation that was not supported by the parties' contract.

¶ 11    In response, Makray argued that the contract terms of the quotation forms and purchase orders were ambiguous because each document's integration clause cancelled out the other document's integration clause; the contractual relationship between the parties was continuously

evolving; and their agreement consisted of their numerous emails and other documents regarding the course of performance, course of dealing, and usage of trade in the plastic processing industry.

¶ 12    The trial court dismissed the counterclaim with prejudice, ruling that Makray could not plead or prove a set of facts that would entitle it to a breach of contract claim or a claim for relief under the Act. The court also granted RTC's motion to return its replevin bond.

¶ 13    Makray appealed.

¶ 14                                    II. ANALYSIS

¶ 15    The case is before us following the dismissal of Makray's second amended counterclaim pursuant to section 2-615 of the Code. "A motion to dismiss under section 2-615 challenges only the legal sufficiency of the complaint and admits the truth of all well-pleaded factual allegations." *Anderson v. Vanden Dorpel*, 172 Ill. 2d 399, 407 (1996). The question presented by a motion to dismiss under section 2-615 is whether the allegations of the pleading, when considered in a light most favorable to the pleader, are sufficient to state a cause of action upon which relief can be granted. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 196 (1999). A cause of action will not be dismissed on the pleadings unless it clearly appears that the pleader cannot prove any set of facts that will entitle it to relief. *Id.* In opposing RTC's motion for dismissal under section 2-615 of the Code, Makray cannot rely on mere conclusions of law or fact unsupported by specific factual allegations. See *Anderson*, 172 Ill. 2d at 408. Illinois is a fact-pleading jurisdiction, and Makray must allege facts sufficient to bring its claim within the scope of the cause of action being asserted. See *id*. We review *de novo* the trial court's dismissal with prejudice of Makray's second amended counterclaim. See *Gallagher Corp.*, 309 Ill. App. 3d at 196; *Thomas v. Weatherguard Construction*

*Co., Inc.*, 2015 IL App (1st) 142785 ¶ 63 (*de novo* review means the appellate court performs the same analysis that a trial court would perform).

¶ 16                                        A. Breach of Contract

¶ 17    Makray argues that it alleged sufficient facts to establish a claim for breach of contract. Specifically, Makray asserts that its second amended counterclaim sufficiently alleged that the parties' written contract terms were ambiguous so the court must go beyond the writing and derive the parties' intent and the meaning of their contract based on the terms established through the course of performance, course of dealing, and customs and usages of the plastic processing industry. According to Makray, the parties' "19 emails and other exhibits" attached to the counterclaim established that, beginning in 2005, RTC required Makray to maintain an inventory of specialized materials and work in progress. Makray also asserts that by 2013 RTC required Makray to maintain an inventory of materials, component parts and finished product for rapid delivery, and RTC monitored that inventory to satisfy the expeditious demands of its customers. Furthermore, Makray argues that the contract between the parties in not contained in Makray's quotation forms and RTC's purchase orders because the competing integration clauses in those conflicting documents established that the parties disclaimed each other's terms and conditions.

¶ 18    To properly plead a cause of action for breach of contract, Makray must allege the essential elements which are (1) the existence of a valid and enforceable contract, (2) performance by Makray; (3) breach of the contract by RTC; and (4) resultant injury to Makray. See *Allstate Insurance Co. v. Winnebago County Fair Association Inc.*, 131 Ill. App. 3d 225, 233 (1985). A counterdefendant's failure to comply with a duty imposed by the contract gives rise to the breach. See *Hickox v. Bell*, 195 Ill. App. 3d 976, 992 (1990). In alleging a breach of contract by a

counterdefendant, a counterplaintiff should also allege the factual circumstances surrounding the formation of the agreement, specifically, the offer, acceptance and existence of valuable consideration. See *Pollack v. Marathon Oil Company*, 34 Ill. App. 3d 861, 864 (1976).

¶ 19    A breach of contract claim requires identification of the actual contact and the specific provisions violated. *Gallagher Corp. v. Russ*, 309 Ill. App. 3d 192, 199 (1999). Our review of the second amended counterclaim and its attached exhibits establishes that the pertinent language of the contract between Makray and RTC is contained in Makray's quotation forms and RTC's purchase orders. Makray's quotation forms contained specific pricing for a specified number of specific products. Furthermore, the terms and conditions section of the quotation form provided:

> "1. Quotations, Formation of Contact: The quotation furnished by Makray constitutes an offer to manufacture, open for a period of thirty days from its date. Either the Customer's signature below, or the receipt of the customer's resulting purchase order at Makray's office in Norridge, Illinois, shall constitute an acceptance of said offer, subject to the terms and conditions contained herein. *Makray's offer via this quotation and the customer's acceptance, shall constitute the entire contract*." (Emphasis added.)

¶ 20    RTC's purchase order similarly stated: "*No terms or conditions in addition to or different from those contained in this Purchase Order shall be binding upon Purchaser or form a part of the contract* represented by this Purchase Order." (Emphasis added.)

¶ 21    Paragraph three of Makray's quotation form provided that if RTC's responsive purchase order changed the specifications or the quantities, then Makray's price quotes were subject to change. Paragraph four of Makray's quotation form provided that Makray would hold *ordered*

molded pieces in stock for RTC's convenience and release those pieces to RTC according to a specified schedule; however, pieces held for longer periods than specified would be subject to reasonable storage charges. If RTC changed the design of parts *made under the old design*, then RTC would be responsible for paying for those molded parts in Makray's stock.

¶ 22     To determine the intention of the parties in construing a contract, the classic rule of construction requires a court to simply look to the contract as ultimately executed. *Hammel v. Ruby*, 139 Ill. App. 3d 241, 247 (1985). When the contract terms are clear and unambiguous, they must be given their ordinary and natural meaning, and no parol evidence may be considered to vary the meaning of the terms. *Id.*

¶ 23     The determination of whether contract language is ambiguous is a question of law. *1000 Condominium Association v. Carrier Corp.*, 180 Ill. App. 3d 467, 469 (1989). Courts must initially determine, as a question of law, whether the language of a purported contract is ambiguous as to the parties' intent and, if the language of the contract is clear and explicit, then courts, as a matter of law, must derive the parties' intent and the meaning of the instrument solely from the writing itself. *USG Interiors, Inc. v. Commercial & Architectural Products, Inc.*, 241 Ill. App. 3d 944, 947 (1993). A court must construe the meaning of a contract by looking at the words used and cannot interpret the contract in a way that is contrary to the plain and obvious meaning of these words. *J.M. Beals Enterprises, Inc. v. Industrial Hard Chrome, Ltd.,* 194 Ill. App. 3d 744, 748 (1990). "[T]he mere fact that parties disagree on a term of a contract is not a sign that the term is ambiguous and unless the agreement unequivocally specifies its own meanings, the court must interpret the words of the contract with their common and generally accepted meanings." *USG Interiors, Inc.*,

241 Ill. App. 3d at 949. When interpreting a written agreement, the court may use evidence of custom and usage only when the writing is ambiguous. *Id*. at 950.

¶ 24   The unambiguous terms of the parties' contract, as set forth in Makray's quotation forms and RTC's purchase responses, affirmatively demonstrate that RTC's contractual relationship with Makray did not require RTC to pay for excess raw materials and extra finished and unfinished products beyond the amount specified in the parties' quotation forms and purchase orders. Makray's attempts to characterize the contract terms an ambiguous are not persuasive. Contrary to Makray's assertions, the integration clauses contained in the quotation forms and purchase orders are not contradictory and do not negate each other. Because the contract terms are not ambiguous, the court does not look to course of performance, course of dealing and trade usage to fill any gaps in the parties' contract; the general rule that the trial court must derive the parties' intent solely from the writing itself is applicable. *Country Service & Supply Co. v. Harris Trust & Savings Bank, Trustee*, 103 Ill. App. 3d 161, 165 (1981) (absent ambiguity in the written terms of an instrument, the instrument provides the sole criteria of intention of the parties).

¶ 25   The parties' quotation forms and purchase orders provided only for the manufacture of a specified number of specified products at a specified price. Those documents did not even mention any obligation of RTC to pay for excess finished goods, work in progress or raw materials. Contrary to Makray's assertions on appeal, paragraphs three and four of its quotation forms had nothing to do with *excess* finished goods, raw materials, or work in progress. Paragraph three merely addressed the potential for price adjustments if RTC either ordered less than the quantity specified on Makray's quotation form or changed the specifications referred to in the contract, or

if the costs of resins or other materials used in manufacturing the parts changed significantly *before* RTC accepted Makray's quotation.

¶ 26    We reject Makray's assertion that the contract terms were ambiguous because the integration clause in Makray's quotation forms conflicted with the integration clause in RTC's purchase orders and thereby cancelled each other out. There was no conflict between the parties' integration clauses; both clauses stressed the same thing: that the parties were not agreeing to anything beyond the specific purchases, including the quantity and price, contained in the quotation form and purchase order.

¶ 27    Furthermore, the exhibits Makray attached to its second amended counterclaim do not support its conclusory allegations that the parties created a different agreement that required Makray to maintain raw materials and excess product in stock so Makray could promptly fill RTC's future purchase orders. For example, RTC's May 2005 outline of the shipping process was not a contract and did not support the alleged obligation of RTC to pay Makray for excess raw materials and inventory. Outlines are not contracts unless they specifically identify the essential terms of the contract—*i.e.*, the identity of a particular product, quantity and price. *Babbitt Municipalities, Inc. v. Health Care Service Corp.*, 2016 IL App (1st) 152662, ¶ 37. The May 2005 outline contained *no* essential terms; it merely set forth the terms for Makray to ship can bases directly to RTC's customers. The May 2005 outline did not mention excess raw materials, finished products or work in progress, or any obligation to purchase them.

¶ 28    We also reject Makray's contention that the exchange of emails between the parties constituted executed writings that reflected their course of performance and dealings over a 13-year period. The unambiguous quotation forms and purchase orders represent the parties' entire

agreement and preclude the consideration of any extrinsic evidence. *Air Safety Inc. v. Teachers Realty Corp.*, 185 Ill. 2d 457, 462 (1999). Furthermore, Makray failed to allege how the numerous emails either referred and connected to each other or contained all the essential elements to show a contract between the parties with no need for parol proof of any of the terms. See *West Bend Mutual Insurance v. DJW-Ridgeway Building Consultants, Inc.*, 2015 IL App (2d) 140441, ¶ 23. Our review of the record establishes that the emails were simply routine correspondence between a longtime supplier and purchaser, which inquired about or facilitated the separate purchases over the years. Furthermore, Makray did not allege that the numerous emails showed that the parties renounced, revised or ceased using their quotation forms or purchase orders. Moreover, the fact that RTC requested for a list of inventory to review and considered buying inventory from Makray at the conclusion of their business relationship was not a promise to do so.

¶ 29     We conclude there is no ambiguity that the parties deemed the quotation forms and responsive purchase orders to constitute their entire contract. Moreover, that contract does not contain any obligation by RTC to pay Makray for excess raw materials, finished products or work in progress. Accordingly, the trial court properly dismissed with prejudice Makray's breach of contract counterclaim under section 2-615 of the Code because Makray cannot prove any set of facts that would entitle it to relief.

¶ 30                    B. Tool and Die Lien Act

¶ 31     Based on our determination that Makray could not plead facts to show RTC had an obligation under their contract to pay Makray for excess raw materials, finished products and work in progress, RTC does not owe Makray $376,099.55. Because there is no underlying debt, Makray

cannot plead facts sufficient to show a claim for relief under the Act. Accordingly, we conclude that the trial court properly dismissed with prejudice Makray's second amended counterclaim.

¶ 32                                III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the judgment of the circuit court that dismissed with prejudice Makray's counterclaim against RTC because Makray cannot prove any set of facts that will entitle it to relief.

¶ 34    Affirmed.